H. DALE VON SEGGERN, APPELLANT, v. JOHN VON SEGGERN ET AL., APPELLEES.

244 N. W. 2d 166

Filed July 21, 1976. No. 40365.

Hurt & Gallant and Daniel A. Smith, for appellant.

Neil W. Schilke of Sidner, Svoboda, Schilke, Wiseman & Thomsen, for appellees.

Heard before WHITE, C. J., SPENCER, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ., and KUNS, Retired District Judge.

BRODKEY, J.

This case involves three brothers, two partnerships, and a family dispute. Appellant, H. Dale Von Seggern, who is referred to as Dale in both the record and in this opinion, brought this action in the District Court for Dodge County on April 19, 1973, alleging the existence of a farming partnership between himself and his brother, John Von Seggern; and also a trucking partnership between himself and his brothers, John and Egbert. In his petition, Dale prayed for the dissolution of both partnerships, an accounting and distribution of the assets, and the appointment of a receiver. John and Egbert filed a joint answer in which they denied that a farming partnership existed between Dale and John, contending, instead, that a joint venture existed as to part of the farming activities. They admitted existence of a trucking partnership between the three brothers. In what they term a cross-petition, but which is actually part of the prayer of their answer, the defendants also prayed that the court dissolve the trucking partnership and determine the obligation of each party to the other arising out of the joint farming venture. Following numerous hearings, extending from February 21, 1974, to July 28, 1975, the court entered its final decree containing many specific findings of fact and ordering "that the partnerships are dissolved and terminated in accordance with the findings herein and that the Clerk of the District Court make the necessary payments as set forth herein; that the plaintiff has no legal ownership in the real estate described herein and the costs herein are taxed equally to H. Dale Von Seggern and John Von Seggern."

Dale's motion for new trial was overruled and he then

perfected his appeal to this court. The record in this case is rather lengthy, consisting of 632 pages of testimony, 102 exhibits, and 85 pages of transcript composed principally of the pleadings, orders, and decrees of the court, and miscellaneous items. It is clear from the assignments of error and his argument, both written and oral, that Dale's appeal is concerned almost exclusively with matters relating to the farming partnership, not the trucking partnership, and we shall likewise confine our discussion to these matters as assigned and argued by Dale to this court.

In his brief, Dale assigns 14 alleged errors which he claims were prejudicial, but only argues 4 of them, all referable to the farming partnership. These are: (1) The court erred in finding that a certain farm purchased by John was not partnership property and in failing to require an accounting of partnership funds which went into the purchase of the farm; (2) the court improperly and unfairly distributed the proceeds from sales of partnership hogs and grain; (3) John did not comply with an interlocutory order entered by the District Court requiring the performance of certain acts; and (4) Dale and John did not receive equal treatment by the court in the allowance of partnership expenses and the disallowance of items of personal expense.

It is clear from a reading of the record that most, if not all, of the problems that have arisen in this case result from the lack or inadequacy of records relative to the operation of the farm partnership over the years involved in this accounting action, as well as from the conflicting nature of the testimony. In deciding this case, we must keep in mind the general rule that, as in other civil cases, the burden is on the plaintiff in an action between partners to prove every material allegation and issue that is necessary to establish his cause of action, and general rules as to presumptions are applied. 68 C. J. S., Partnership, § 130, p. 566, et seq. This court has held that in an accounting action between partners,

the burden is upon the plaintiff to establish his right to the accounting and his right to a credit on disputed items. Barthuly v. Barthuly, 192 Neb. 610, 223 N. W. 2d 429 (1974).

By way of background, it appears that prior to 1965, John and Dale were associated in farming under a loose arrangement exchanging labor and machinery, and sharing the use of their father's machinery. Each financed his own operations through Production Credit Association (P.C.A.), Fremont, Nebraska, and each had his separate account. In February 1965, P.C.A. required that they merge their accounts into one, indicating it would not continue financing unless this was done. There is evidence that P.C.A. had misgivings about Dale's financial stability, and insisted upon the merger to make both Dale and John liable. Dale contends that he and John became partners in everything as of that date. John contends that there was no farming partnership, although there was a trucking partnership. The trial court found that there were partnerships existing as to both the farming and trucking operations, and this was not an issue in this appeal.

No formal partnership agreement relating to the farming operations was ever entered into, setting forth rights and liabilities of the partners specifying their capital contributions or division of profits. The only actual evidence of this partnership were the records of P.C.A., which referred to their relationship as a partnership. The records of the farming partnership were principally kept by John and his wife, Billie Jean, on their farm. There is no evidence in the record as to the nature and extent of these records, although it seems fairly clear that there was no capital contributions account for the partners. Both John and Dale maintained checking accounts showing, among other things, the checks drawn on their private accounts in payment of partnership obligations. While partnership income tax returns were filed with reference to the operations of the trucking

partnership, both parties testified that there were no partnership returns filed during the years in question for the farming partnership. The individual returns of the partners were filed purportedly disclosing information on income from the farm partnership and details with reference to crops and livestock raised and sold by the partnership. In the brief filed by counsel for Dale, it is repeatedly claimed that John and his wife refused to allow Dale to see the partnership books and records. This is clearly refuted by Dale's own testimony and admissions in the record. He testified that at one time he and his wife offered to take care of the books, but admitted that there was no flat refusal by John. Later in his testimony he again testified that during an audit of his income tax return by the Internal Revenue Service, he had requested permission to take the books to his home, and that John refused to allow him to do so. However, he admitted that John and his wife told him that he could send a lawyer around to examine the books in their home, or at an attorney's or accountant's office. In any event, there is nothing to indicate why Dale could not have obtained the partnership records for use at the trial by discovery proceedings.

Both partners had the right to, and did, draw upon P.C.A. for money, some of which was applied to partnership obligations, and some to personal expenditures. The records of P.C.A., received in evidence, show withdrawals from the joint account of the partners, but do not clearly indicate what was withdrawn by whom, and for what purpose. The evidence and exhibits relating to the partners' respective draws for the years 1964 through 1973, were hopelessly muddled and confused. In order to clarify these matters for trial, both parties stipulated to retaining an accounting firm to examine the available records. The accountant handling the matter for that firm testified at the trial that by comparing the loan balance sheets at P.C.A. for the "partnership account" with deposits in Dale and John's individual savings and

checking accounts, and also the income tax returns for the individual partners, he was able to reach certain conclusions about each party's draws since the inception of the partnership, but he was not able to reconcile all the items shown on the records. His figures were accepted by the District Court and incorporated in its final decree, charging John with withdrawals of $108,643.14, and Dale with withdrawals of $74,145.93. Although Dale did not agree with the accountant's figures, he never supplied any figures of his own to contradict them.

The trial court also accepted without change John's estimate of his partnership expenses over the years in the amount of $115,729.54. Dale contends some of the items were for personal expenses, but this was denied by John and his wife in their testimony. The court allowed Dale $56,000 for expenses, although Dale claimed the amount of $62,195.38 for that purpose. The testimony indicated that most of the livestock maintenance and feeding took place at John's farm and that he handled most of the disbursements for these activities. The record also reveals that Dale's income tax records and expense records were conflicting, and he also admitted on cross-examination that he had improperly listed certain other items as expenses. This casts some doubt on the reliability of Dale's claims. The decree of the court, among other things, also required that John repay the excess amount from sales made in winding up the farming operations, and allowed him a credit for feeding the livestock before they were sold.

Dale's first assignment of error is that a farm purchased in 1967, by John and his wife Billie Jean, under an installment contract, was actually purchased with partnership funds, and is, therefore, partnership property. There is no question that the evidence fully supports the trial court's conclusion that the farm in question was owned by John and his wife. Egbert, in his testimony, related the conversations between the brothers about buying the farm, and testified that both he

and Dale told John they wanted no part of the farm and that John would have it as his own. However, there was some testimony to the effect that John promised to assist Dale in buying a farm at some later date. Dale claims, however, that part of the payments for the farm were taken from partnership funds, and should be accounted for. We believe the court was correct in finding that the farm was purchased with funds drawn in the most part from the trucking partnership, which the court in its decree found was owing to the partnership by John. The downpayment on the farm was made by John out of proceeds from the sale of his own Class A, P.C.A. stock. The proceeds from the crops grown on his land were to go toward payment of the purchase price, and, for the most part, were placed in the brothers' joint P.C.A. account, at P.C.A.'s insistence. Taxes were paid out of the transfers from the P.C.A. account to John's personal checking account.

The history of this partnership indicates that various transfers were made out of the P.C.A. account to the partners' personal accounts with few records being kept as to their ultimate use, partnership or personal. Egbert was adamant that none of the advances from the trucking company used for the farm payments indicated that the farm was partnership property. Dale testified that he knew if John did not complete the installment contract, he, Dale, would not be liable for any payments and that the seller would retain the farm. The evidence indicates that, despite Dale's current perceptions to the contrary, the farm was not bought with partnership funds nor was it ever intended to be partnership property.

Appellant's second assignment of error is that the court incorrectly determined the parties' shares of the proceeds of the sale of the partnership hogs and grain. In its decree, the court found that John had disposed of partnership livestock, cattle, and hogs, in a total value of $54,715.95, of which $41,785 was applied to P.C.A.'s

indebtedness, leaving $12,920.95 owing to the partnership. Appellant contends that "by the arbitrary ruling of the trial court," in effect, all the hogs ceased to be partnership hogs on September 1, 1973. The partnership ceased operation as a partnership in December 1972, as found by the court in its decree. At that time, the partnership owned 293 hogs of various ages and varieties. The cattle and grain sales accounted for almost $14,000 of the $54,715.95 of sales. The court apparently attributed approximately $40,000 to hog sales for 1973. John testified that the proceeds were applied, as ordered, to P.C.A. indebtedness. Dale's counsel disputes this, arguing that, as is apparent from the P.C.A. loan summary sheet for 1973, $877.01 from a July 19, 1973, sale of sows was not applied to the P.C.A. account. It is true that the $877.01 is not credited as a payment for July 19, but the sheet shows that on that date $877.01 was applied to interest on the partnership loan. Few of the deposits in the P.C.A. account coincide exactly with the amounts reportedly received in payment for the hogs, as shown by the parties' testimony and exhibits. However, totalling and comparing the amounts of the sales reported by John, the amount shown by Dale, and the amounts deposited in the P.C.A. account, convinces us that the District Court's findings were correct. The court's decision to select a date of September 1, 1973, nearly three-quarters of a year after the breakup of the partnership, as a cutoff point for determining the ownership of the partnership hogs was, we believe, proper. Given the natural geometric growth pattern and the life cycle of the animals, a cutoff date was absolutely essential in order to make an accounting between the partners. The partnership was credited with proceeds from the sale of upwards of 300 hogs, which we find to be substantially correct.

The final decree found $15,528.97 owed to the partnership by John as proceeds from grain sales which had not been applied to P.C.A. indebtedness. Appellant argues

that the District Court allowed John to convert the proceeds of grain and soybeans, but cites no persuasive evidence of a conversion. Counsel for Dale refers to some 50 tons of ensilage also allegedly converted by John, but offers no proof of this allegation. John, on the contrary, testified that a substantial portion of the ensilage was probably used to feed the partnership cattle before their sale. In any event, the amount assessed against John for alleged grain sales appears to be greater than the amount of grain and soybean sale proceeds shown at the trial.

Appellant's third assignment of error is also without merit. The court's interlocutory order of May 2, 1973, did direct that the excess funds derived from the sale of livestock and grain be deposited in a savings account in a financial institution in Fremont, Nebraska, "in the names of H. Dale Von Seggern and John Von Seggern in such manner that the funds cannot be pledged or withdrawn without the signature of both parties hereto." While it is true that the record reveals that John deposited such proceeds in a special account in his own name, nevertheless, we feel that this is a matter that should have been thrashed out, if necessary, in a contempt proceeding in the trial court. We do not find that Dale was prejudiced by this technical violation, as the trial court adjusted the parties' rights by requiring John to pay the partnership the proceeds of the sales not deposited as ordered by the court.

Appellant's final assignment of error is that he and John were treated differently in the court's decree as to the allowance of expenses. As previously stated, there was considerable dispute in the record as to the nature of certain expenditures. For example, Dale contends that the District Court improperly awarded John compensation for winding up the affairs of the farming operation, which, of course, would be improper. The decree, however, does not state that any such compensation was included in the division of partnership funds. In this case,

the accountant testified that the livestock operation was evidently based on a fifty-fifty distribution of proceeds, but that he could discern no pattern in the distribution of the grain proceeds. Dale stated he believed that the entire farm operation was on a fifty-fifty basis. The trial court in its decree divided the total credit in the partnership equally between John and Dale, after allowing the approved expenditures of each. It does not appear that John was given any extra consideration apart from the allowance of partnership operating costs. It is possible, however, that since John's personal skill and services in managing the operation after dissolution resulted in additional partnership income, the court might well have considered that fact in apportioning the brothers' shares.

In actions in equity, it is the duty of the Supreme Court to try the issues of fact de novo on the record and to reach an independent conclusion without reference to the findings of the District Court. Such independent conclusions of fact must be determined by the Supreme Court in accordance with ordinary rules governing the burden of proof, and competency and materiality of the evidence. Shirk v. Schmunk, 192 Neb. 25, 218 N. W. 2d 433 (1974). We have also held that when credible evidence on material questions of fact is in irreconcilable conflict, this court will, in determining the weight of the evidence, consider the fact that the trial court observed the witnesses and their manner of testifying, and must have accepted one version of the facts rather than the opposite. Pinney v. Hill, 191 Neb. 844, 218 N. W. 2d 212 (1974); Scripter v. Scripter, 188 Neb. 576, 198 N. W. 2d 201 (1972). This court has also held many times that even when the case is triable de novo, the superior position of the original trier of facts is to be respected and accorded great weight. Crete Education Assn. v. School Dist. of Crete, 193 Neb. 245, 226 N. W. 2d 752 (1975); Klecan v. Schmal, ante p. 100, 241 N. W. 2d 529 (1976).

Counsel for Dale urges this court to remand this case to the District Court "to complete the accounting." As previously stated, the burden of proof in this action is upon the appellant. He has already had one trial on the issues. If additional evidence was needed and available, it should have been obtained prior to the trial and introduced below. While appellant alleges error in the District Court's accounting and requests further action, nowhere does he specifically indicate what the correct figures should be.

The trial judge used great diligence and effort to bring order out of chaos and to adjust equitably the interests of the partners, so far as possible from the evidence and records before him. We find no reason to depart from his conclusions and, therefore, affirm the judgment below.

AFFIRMED.