KEITH MOGENSEN, APPELLANT AND CROSS-APPELLEE, .V. STEVEN
MOGENSEN, DEFENDANT AND THIRD-PARTY PLAINTIFF, APPELLEE
AND CROSS-APPELLANT, BRIAN MOGENSEN, THIRD-PARTY
DEFENDANT, APPELLEE, SANDRA MOGENSEN, THIRD-PARTY
DEFENDANT, APPELLEE AND CROSS-APPELLEE, AND
OPAL MOGENSEN, THIRD-PARTY DEFENDANT, .
APPELLANT AND CROSS-APPELLEE.

729 N.W.2d 44

Filed March 16, 2007.    No. S-05-879.

Galen E. Stehlik, of Lauritsen, Brownell, Brostrom, Stehlik, Myers & Daugherty, P.C., L.L.O., for appellants.

Cathy S. Trent-Vilim, of Wolfe, Snowden, Hurd, Luers & Ahl, L.L.P., and, on brief, Barry D. Geweke, of Stowell, Kruml, Geweke & Cullers, P.C., L.L.O., for appellee Steven Mogensen.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

Keith Mogensen sued Steven Mogensen to force him to sell his partnership interest in Mogensen Bros. Land & Cattle Company (Mogensen Bros.). Keith sought to enforce a buyout provision in the partnership agreement. Steven counterclaimed against Keith, Sandra Mogensen, and Opal Mogensen, seeking a declaration that two real estate parcels, known as DeWulf Place and Mahoney Place, are partnership property. Opal is the titled owner of DeWulf Place, and Keith owns Mahoney Place.

In Keith's claim, the district court found that under the partnership agreement, Keith failed to exercise the buyout within 90 days as provided in the partnership agreement. In Steven's counterclaim, the court found that Opal's DeWulf Place was partnership property, but denied Steven's claim that Mahoney Place was partnership property.

We have two questions to consider: (1) when did the 90-day provision start and (2) whether the two real estate parcels titled in Opal's and Keith's names are partnership property.

## I. BACKGROUND

### 1. THE PARTIES

In 1982, brothers Brian Mogensen, Keith, and Steven entered a partnership agreement forming Mogensen Bros., a farming operation. Third-party defendant Opal is their mother, and third-party defendant Sandra is Keith's wife. The brothers are also the shareholders in a family construction company called Ranch and Farm Agricultural Systems, Inc. (Ranch and Farm).

### 2. THE PARTNERSHIP'S BUYOUT PROVISION

The Mogensen Bros. partnership agreement contains a buyout option. Paragraph 19 of the partnership agreement provides that a partner who wishes to withdraw and dispose of his interest must give the other partners written notice of his intent and

an opportunity to purchase his interest. This provision further requires that a partner electing to purchase must provide notice of his intent to the withdrawing partner within 90 days after the withdrawing partner gives notice that he intends to dispose of his interest. The withdrawing partner must then sell his interest to the purchasing partner at book value.

### 3. STEVEN'S PRIOR LAWSUIT

For several years, tension had been building between Steven and his brothers. Brian, Keith, and Steven attempted to reach an agreement in dissolving and winding up the partnership, but those attempts failed. On October 3, 2002, Steven sued Mogensen Bros., Keith, and Brian, seeking to have the partnership dissolved and its assets liquidated under the Uniform Partnership Act of 1998.[1] The district court, however, found that under § 67-404(1), judicial dissolution was inappropriate. The court found that under § 67-404(1), the partnership agreement governs relations between partners. And because the Mogensen Bros. partnership agreement provides a method for a partner to withdraw from the partnership, the court found the partnership agreement governs the partnership dissolution. On July 28, 2003, the court granted summary judgment against Steven. Steven did not appeal.

### 4. KEITH SUES STEVEN TO FORCE THE BUYOUT PROVISION

Keith alleges that Steven's 2002 lawsuit to dissolve the partnership amounted to written notice that Steven intended to dispose of his interest in Mogensen Bros. Consequently, on August 25, 2003, Keith notified Steven that he intended to exercise the option to purchase Steven's partnership interest. He sent another letter to Steven on October 15, 2003, with an accountant's evaluation of Steven's interest. Steven refused to sell his partnership interest to Keith.

On March 29, 2004, Keith sued Steven to specifically enforce the buyout provision. The district court found that when Steven filed his 2002 lawsuit for dissolution, he gave notice of his intent to dispose of his partnership interest. But the court also found

---

[1] See Neb. Rev. Stat. §§ 67-401 to 67-467 (Reissue 2003 & Cum. Supp. 2006).

that Keith did not exercise his option to purchase within 90 days. The court determined that Steven's notice to sell his interest was effective the day he filed suit. Because Keith did not give notice of his intent to purchase until nearly 1 year later, the district court found that Keith failed to timely exercise the buyout option. The court dismissed Keith's complaint. Keith appeals, arguing that the July 28, 2003, order granting summary judgment—not the date Steven filed his action—triggered the start of the 90-day notice period and that thus, his August 25 and October 15 letters were timely notice. Steven does not appeal the court's finding that his lawsuit triggered the buyout provision.

### 5. STEVEN'S COUNTERCLAIM

In Steven's counterclaim to Keith's lawsuit, he requested a declaration that Mogensen Bros. owns two parcels of real estate known as DeWulf Place and Mahoney Place. Although neither property is titled in the partnership's name, Steven claims that Mogensen Bros. owns both parcels.

(a) Evidence Regarding Ownership of DeWulf Place

Brian, Keith, and Steven decided to purchase DeWulf Place at auction. Opal, however, is the title owner of DeWulf Place. Opal testified she acquired title because "[t]he boys decided that they wanted to put it in my name and I agreed to it." She testified they put the property in her name to benefit from a government farm subsidy program. She further testified Mogensen Bros. paid 10 percent of the purchase price, about $10,000 to $12,000, and she financed the remaining 90 percent through a loan from Ranch and Farm.

For about 8 years, from 1990 to 1998, the partnership paid no rent, but made improvements and paid the taxes on the property. Opal testified that Mogensen Bros. "developed the land, they put pivots on it, [and] they put wells down," and the partnership listed the irrigation development at DeWulf Place as a partnership asset. Keith and Opal testified, however, that the improvements and taxes were considered rent. At some point after 8 years, Mogensen Bros. began paying Opal $30,000 in annual rent, and Opal testified she paid the real estate taxes and made the $25,000 loan payment to Ranch and Farm. Mogensen Bros., however, reimbursed Opal for real estate taxes on DeWulf Place in 2002.

Some documents also show Mogensen Bros. as the owner of DeWulf Place, including the ground water well registration. And Mogensen Bros. listed DeWulf Place as a partnership asset on the Mogensen Bros. 2003 tax asset schedule. Keith or Opal, however, informed the partnership's accountant that DeWulf Place should not have been on the tax schedule, and the accountant removed it. Opal testified that she considers the farm to be hers.

The district court determined that Mogensen Bros. owns DeWulf Place. It found that "the evidence clearly shows that . . . DeWulf [P]lace was acquired solely with partnership assets." Keith and Opal appeal.

### (b) Evidence Regarding Ownership of Mahoney Place

Keith is the title owner of Mahoney Place. Keith and Sandra borrowed the funds to purchase Mahoney Place, and they have made the annual loan payments. After acquiring the property, Keith and Sandra annually leased it to Mogensen Bros. Mogensen Bros. and Keith have both paid for irrigation developments on the property. The district court found that Keith and Sandra own Mahoney Place.

## II. ASSIGNMENTS OF ERROR

Keith and Opal assign, restated and renumbered, that the district court erred in (1) holding that Keith did not timely exercise the buy-sell provision of the partnership agreement and (2) determining that DeWulf Place is a partnership asset.

On cross-appeal, Steven assigns, restated, that the court erred in determining that Mahoney Place is not a partnership asset.

## III. STANDARD OF REVIEW

■ Regarding Keith's claim to enforce the buyout provision, an action for specific performance sounds in equity, and on appeal, we decide factual questions de novo on the record. We will resolve questions of fact and law independently of the trial court's conclusions.[2]

■ Regarding Steven's counterclaim, in reviewing an equity action for a declaratory judgment, we decide factual issues de

---

[2] See *Langemeier v. Urwiler Oil & Fertilizer*, 265 Neb. 827, 660 N.W.2d 487 (2003).

novo on the record and reach conclusions independent of the trial court. But when credible evidence is in conflict on material issues of fact, we may consider and give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another.[3]

## IV. ANALYSIS

### 1. BUY-SELL AGREEMENT

#### (a) Timeliness of Keith's Election to Purchase Steven's Interest

Keith contends that he timely exercised his option to purchase Steven's partnership interest under the buyout provision. He argues that he complied with the timeframe because he gave notice of his intention to buy out Steven's partnership interest within 90 days of July 28, 2003, the date of the summary judgment order in Steven's prior lawsuit.

We have not previously addressed the issue of when a lawsuit for dissolution of a partnership triggers a buy-sell provision. But other courts have held that the filing of a lawsuit to dissolve a partnership or service of the complaint gives notice of a partner's intent to withdraw or dissolve a partnership. In *Logan v. Logan,*[4] the plaintiffs brought an action for dissolution of a partnership. In response, the defendant tendered an election to purchase the plaintiffs' interest under the buy-sell provision in their partnership agreement. After the plaintiffs refused to sell, the defendant counterclaimed for specific performance. The Washington Court of Appeals held that by filing suit, the plaintiffs had provided notice of their intention to withdraw. The court stated, "The *filing* of the groundless lawsuit was an act inconsistent with the continuation of the partnership."[5] The defendant was therefore entitled to specific performance of the buyout provision. Similarly,

---

[3] See *City of Ashland v. Ashland Salvage*, 271 Neb. 362, 711 N.W.2d 861 (2006).

[4] *Logan v. Logan*, 36 Wash. App. 411, 675 P.2d 1242 (1984).

[5] *Id.* at 423, 675 P.2d at 1249 (emphasis supplied). See, also, *Clark v. Allen et al*, 215 Or. 403, 410, 333 P.2d 1100, 1103 (1959) ("[t]he filing of the complaint was notice of dissolution").

in *Maus v. Galic*,[6] the Minnesota Court of Appeals addressed whether a lawsuit triggered dissolution of a partnership. The court stated, "'[N]othing could send a clearer message of intent to terminate and provide more reasonable notice of such termination than *service of a complaint* seeking as relief dissolution of the partnership.'"[7]

We conclude that service of the complaint on Keith, rather than either the summary judgment order or the filing of the lawsuit, provided notice of Steven's intent to withdraw and dispose of his interest. Although the record does not show the date of service, it does show that Keith moved for summary judgment on May 20, 2003, which indicates he had at least received notice by that date. Keith's first letter of intent to purchase Steven's interest in the partnership, dated August 25, 2003, was outside the 90-day limitation period. We affirm the district court's order denying specific performance.

(b) Equitable Relief

Keith also argues that Steven is equitably estopped from asserting the 90-day time period as a defense. Throughout this litigation, Steven has denied that he invoked the partnership agreement's buy-sell provision when he sued to dissolve the partnership. Keith contends that it is inequitable for Steven to now gain protection from the same partnership provision he has attempted to avoid through this litigation.

The elements of equitable estoppel are, as to the party estopped: (1) conduct which amounts to a false representation or concealment of material facts, or at least which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts.

As to the other party, the elements are: (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of

---

[6] *Maus v. Galic*, 669 N.W.2d 38 (Minn. App. 2003).

[7] *Id.* at 45 (emphasis supplied).

the party to be estopped; and (3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his or her injury, detriment, or prejudice. The first prong of this test is met when one lulls his or her adversary into a false sense of security, thereby causing that person to subject his or her claim to the bar of the statute of limitations, and then pleads the very delay caused by his or her conduct as a defense to the action when it is filed.[8]

▮ Equitable estoppel is not limited to circumstances of fraud but may also be applied to prevent an inequitable resort to a statute of limitations. And a defendant may, by his or her representations, promises, or conduct, be so estopped where the other elements of estoppel are present.[9]

Keith asserts that Steven's conduct in filing his lawsuit and denying that he provided notice of his intent to withdraw creates a basis for equitable estoppel. We disagree. Steven did not make any promise or representation, or engage in any conduct, that would have led Keith to delay sending notice of his intent to purchase Steven's shares. Keith argues, "While Steven may not have 'lulled' Keith into a sense of security, thereby causing him to subject the instant suit to the bar of a time provision limitation, Steven's prior suit for judicial dissolution is akin to the same when all of the facts of the matter are examined."[10] It is unclear how filing a lawsuit or denying Keith's claims could cause Keith to act to his detriment. If anything, the initiation of litigation against Keith should have alerted him of the need to diligently protect his interests. This argument is without merit.

## 2. DeWulf Place Is Partnership Property

▮ Steven, in his counterclaim, alleged that DeWulf Place is partnership property despite being titled in Opal's name. Nebraska's Uniform Partnership Act of 1998 governs when property is considered partnership property. Section 67-412(3) of the act provides:

---

[8] *Olsen v. Olsen*, 265 Neb. 299, 657 N.W.2d 1 (2003). See, also, *Manker v. Manker*, 263 Neb. 944, 644 N.W.2d 522 (2002).

[9] *Olsen v. Olsen, supra* note 8.

[10] Brief for appellants at 21.

> Property is presumed to be partnership property if purchased with partnership assets, even if not acquired in the name of the partnership or of one or more partners with an indication in the instrument transferring title to the property of the person's capacity as a partner or of the existence of a partnership.

The district court found that "the evidence clearly shows that . . . DeWulf [P]lace was acquired solely with partnership assets." The court therefore applied the presumption in finding that DeWulf Place is partnership property. Keith and Opal argue that Mogensen Bros. did not purchase DeWulf Place with partnership assets, so the district court should not have applied the presumption in § 67-412(3).

■ Although the record reflects that DeWulf Place was not acquired solely with partnership assets, we find that the presumption in § 67-412(3) applies because Mogensen Bros. supplied at least part of the purchase price. Although Keith and Opal argued that Mogensen Bros. contributed funds either as rent or as a loan to Opal, the record does not support this argument. Further, the presumption can apply even when the partnership provides only a portion of the purchase price.[11] And it can apply even though a third party who is not a partner to the firm holds title.[12]

■ In determining whether a party has rebutted the presumption, no single factor or combination of factors is dispositive.[13] Ultimately, the partners' intentions control whether property belongs to the partnership, at least among the partners themselves.[14] Common factors in considering partners' intent include the partnership's use of the property for partnership purposes, the erection of buildings and other improvements at partnership expense, whether partnership books and accounts treat property as partnership property, whether the property is listed in credit

---

[11] See, *Bachand v. Walker*, 455 N.W.2d 851 (S.D. 1990); 59A Am. Jur. 2d *Partnership* § 250 (2003).

[12] See, *In re Wilson's Estate*, 50 Wash. 2d 840, 315 P.2d 287 (1957); 59A Am. Jur. 2d, *supra* note 11, § 258.

[13] See *Bachand v. Walker, supra* note 11.

[14] See Unif. Partnership Act (1997), § 204, comment 3, 6 U.L.A. 97 (2001).

applications and tax returns as a partnership asset, and whether the partnership is involved in the payment of taxes.[15] However, a presumption of "prima facie individual ownership of real property" also exists in the titleholder.[16] But "[t]he inference concerning the partners' intent from the use of partnership funds outweighs any inference from the State of the title . . . ."[17]

We addressed some of these factors in *Von Seggern v. Von Seggern*.[18] There, farm property was titled in the name of John Von Seggern, a partner in a farming partnership. Another partner, however, claimed the partnership made some of the payments, making the farm partnership property. We determined that the partnership had not purchased the farm with partnership funds. Further, the evidence reflected that the other partners did not want the farm and that John should have it as his own. We also considered that John paid the taxes in concluding that the farm did not belong to the partnership.

The South Dakota Supreme Court also considered several factors that rebutted the presumption. In *Bachand v. Walker*,[19] land was titled in the name of Bruce Walker and his wife, and Walker made most of the payments individually. The partnership, however, made two payments with partnership funds. The court recognized the rebuttable presumption that property purchased with partnership funds becomes partnership property. But the court also considered several other factors. Walker and his wife had purchased the property before the partnership was formed. He paid for the property taxes, insurance, and improvements in excess of $500. Further, the partnership never listed the property as an asset in any partnership documents. The court determined that the parties did not intend the property to be partnership property.

Here, although some evidence does indicate an ownership interest in Opal, it is not enough to overcome the presumption in

---

[15] See 59A Am. Jur. 2d, *supra* note 11, §§ 252 and 253.

[16] *Id.*, § 254 at 364.

[17] Unif. Partnership Act (1997), *supra* note 14, comment 4 at 98.

[18] *Von Seggern v. Von Seggern*, 196 Neb. 545, 244 N.W.2d 166 (1976).

[19] See *Bachand v. Walker, supra* note 11.

§ 67-412(3). We conclude that the brothers purchased the property for the partnership. The most convincing proof of their intent is that Brian, Keith, and Steven decided they wanted the property[20] and then decided to put it in Opal's name to take advantage of a government program. The brothers essentially controlled the transaction in obtaining the land, including using partnership funds to pay for the property. The facts that the partnership developed the land, paid the real estate taxes, and improved the farm for the first 8 years without paying rent further bolster our conclusion.[21] The record reflects that the partnership now pays Opal $30,000 annually in rent, which Opal uses to pay the real estate taxes and the annual loan payment to Ranch and Farm. But the record fails to show whether Opal made payments on the loan during the period when the partnership was not paying rent.

The use of partnership funds in the purchase and the other evidence suggest that Opal owns DeWulf Place in name only. However, equity dictates that Opal should not be liable for the debt on DeWulf Place—real estate she no longer owns. Once we acquire equity jurisdiction, we can adjudicate all matters properly presented and grant complete relief to the parties.[22] We hold that DeWulf Place is partnership property, subject, however, to Mogensen Bros.' paying the balance of the indebtedness owed to Ranch and Farm.

### 3. STEVEN'S CROSS-APPEAL; MAHONEY PLACE IS NOT PARTNERSHIP PROPERTY

Steven contends that Mahoney Place is partnership property. The evidence, however, shows that the presumption in § 67-412(3) does not apply. Instead, the opposite presumption applies. Section 67-412(4) provides:

> Property acquired in the name of one or more of the partners, without an indication in the instrument transferring title to the property of the person's capacity as a partner or of the existence of a partnership and *without use of partnership*

---

[20] Cf. *Von Seggern v. Von Seggern, supra* note 18.

[21] Cf. *Bachand v. Walker, supra* note 11.

[22] See *Denny Wiekhorst Equip. v. Tri-State Outdoor Media,* 269 Neb. 354, 693 N.W.2d 506 (2005).

*assets*, is presumed to be separate property, even if used for partnership purposes.

(Emphasis supplied.)

Here, Keith is the title owner of Mahoney Place, with no indication in the deed that he owns it in his capacity as a partner. Keith purchased it solely with his funds, and he is liable for the loan payments. Thus, the presumption in § 67-412(4) applies. Further, no significant evidence exists that would overcome the presumption. The district court did not err in finding that Mahoney Place is not partnership property.

## V. CONCLUSION

We conclude that Keith did not timely exercise the buy-sell provision of the partnership agreement. DeWulf Place is partnership property subject to Mogensen Bros.' paying the balance of the indebtedness owed to Ranch and Farm, and Mahoney Place is not partnership property. Accordingly, we affirm as modified the district court's decision.

AFFIRMED AS MODIFIED.