746 N.W.2d 394 (2008)
16 Neb. App. 596
Wesley J. JONES, an individual, Appellee,
v.
Daniel F. STAHR and Georgia A. Stahr, husband and wife, Appellants,
Therese Dorenbach, Appellee, and
Larry Coffey, Intervenor-Appellant.
No. A-06-572.
Court of Appeals of Nebraska.
March 25, 2008.
*396 William G. Blake and Jason L. Scott, of Pierson, Fitchett, Hunzeker, Blake & Katt, Lincoln, for appellants and intervenor-appellant.
Shannon R. Harner and Susan M. Napolitano, of Hoppe & Harner, L.L.P., Lincoln, for appellee Wesley J. Jones.
Darrell K. Stock, of Snyder & Stock, Lincoln, for appellee Therese Dorenbach.
INBODY, Chief Judge, and CARLSON and CASSEL, Judges.
CASSEL, Judge.

INTRODUCTION
This appeal addresses whether a right of first refusal to purchase real estate remains personal in nature after the seller has decided both to sell the entire remaining property and to accept the terms and conditions specified by a potential buyer. We conclude that upon the concurrence of these events, the right of first refusal ripens into an option. Because such options are ordinarily assignable, a provision in the option holder's acceptance reserving the right to assign does not constitute a material deviation. We reverse, and remand with direction.

BACKGROUND
The relevant facts are not in dispute. On February 14, 1998, Therese Dorenbach entered into an agreement with Daniel F. Stahr and Georgia A. Stahr, husband and wife, for the sale of Dorenbach's real property at 7800 N.W. 70th Street, Malcolm, Nebraska. The purchase agreement contained the following language:
Buyer [the Stahrs] acknowledges that Seller [Dorenbach] has previously granted to Gary Aerts a right of first refusal to fifteen (15) acres adjacent to Property.. . . However, subject to that right of first refusal held by Gary Aerts, Seller [Dorenbach] does grant a subordinate right of first refusal to Buyer [the Stahrs] on the land retained by Seller [Dorenbach], comprising approximately one hundred twenty seven (127) acres, more or less.
On or about April 17, the Stahrs took title to the property at 7800 N.W. 70th Street.
On or about June 14, 2005, Dorenbach listed her remaining property, located at 7900 N.W. 70th Street, with a real estate broker. The broker sent a letter to the Stahrs telling them that Dorenbach had listed the property and that once an offer came in, they would be given 24 hours to match or exceed the purchase price.
On June 27, 2005, Wesley J. Jones submitted an offer to Dorenbach to purchase *397 the property. Jones offered Dorenbach $550,000 for the property, and his offer was conditioned upon his ability to obtain a $400,000 loan. On June 28, Dorenbach accepted Jones' offer. The next day, Swanson telephoned the Stahrs and provided them with a copy of Jones' purchase offer. On the morning of June 30, the Stahrs' agent delivered a purchase agreement, dated June 29, 2005, to Dorenbach stating that they wished to purchase the property for the same price. In the Stahrs' agreement, they stated that they would be paying the purchase price entirely in cash, and the Stahrs inserted the following language in an addendum to their purchase agreement: "Buyer [the Stahrs] reserves the right to assign this contract to a third party prior to closing."
In a letter dated July 20, 2005, Dorenbach's attorney informed the Stahrs that their offer was not acceptable, given that the offer provided for the Stahrs to be able to assign the contract to a third party prior to closing. Specifically, the letter states:
When this was entered into, [Dorenbach] intended the right of refusal to be personal to you and she is not willing to allow it to be assigned in any manner. [Dorenbach] is also bothered by the fact that your purchase agreement indicates that the payment will be "all cash," yet it has come to our attention that there will be a loan from Hastings State Bank which has some contingencies.
The letter also states that Dorenbach had received a revised offer from Jones, and it told the Stahrs they had 24 hours within which to agree to or exceed the terms of Jones' second offer. The Stahrs then notified Dorenbach that they would stand on the exercise of their right of first refusal made in response to Jones' initial offer and that they were ready, willing, and able to close on the purchase of the property. The record shows that Dorenbach did not sell the property to Jones or the Stahrs, but that Gary Aerts exercised his right of first refusal and purchased 15 acres from Dorenbach.
On August 31, 2005, Jones filed his complaint against the Stahrs and Dorenbach seeking declaratory judgment determining the rights and duties of the parties under the contracts. The Stahrs filed an answer, counterclaim, and cross-claim seeking to enforce their offer to purchase Dorenbach's property. Subsequently, the Stahrs assigned any rights they had to purchase Dorenbach's property to Larry Coffey and Coffey filed a complaint in intervention in the action. Dorenbach's amended cross-claim and counterclaim alleges that the right of first refusal was personal to the Stahrs, and Dorenbach sought to have the Stahrs' right of first refusal declared invalid.
Trial was held on March 28, 2006. Dorenbach testified that when negotiating with Daniel in 1998 for the sale of her land at 7800 N.W. 70th Street, Daniel brought up the idea of the right of first refusal. Dorenbach stated that Daniel indicated that he wanted the right of first refusal for himself. Dorenbach testified that she and Daniel did not discuss the Stahrs' ability to assign the right. Dorenbach testified that she gave the Stahrs the first right of refusal "on the feeling that in good faith it was for [Daniel] and [Daniel] only." Dorenbach testified that she would not have agreed to the right of first refusal if it had contained language allowing the right to be assigned. Dorenbach testified that she granted Aerts a right of first refusal to 15 acres of her property because Aerts, her neighbor, told her that he wanted to buy additional property adjacent to his own so that no one could build close to his property.
*398 Dorenbach stated that in the 1998 purchase agreement with the Stahrs, she included a provision stating that the Stahrs were granted the right to hunt on Dorenbach's land. The provision states, "Buyer [the Stahrs] understands that this right to hunt is not exclusive and other hunters, including but not limited to family members of Seller [Dorenbach], will be hunting on Seller's [Dorenbach's] adjacent land at various times." The 1998 agreement also states that the Stahrs asked to erect a sign on Dorenbach's land at the northeast corner of the intersection of N.W. 70th Street and U.S. Highway 34, and Dorenbach agreed, but the agreement stated, "This right is specific to the current Buyer [the Stahrs] and is not assignable or transferable."
Daniel testified that he spoke to Dorenbach's son about the right of first refusal and mentioned that he wanted to have the option to purchase the property adjacent to the land he purchased from Dorenbach in 1998 if he could afford it. Daniel testified that he and Dorenbach never discussed whether the right of first refusal would be assignable. Daniel testified that the Stahrs intended their June 29, 2005, offer to purchase Dorenbach's property to meet the terms of Jones' offer without significantly varying from those terms. Daniel testified that he remained ready, willing, and able to do what is necessary to close on the purchase of Dorenbach's property on the terms of the June 29 purchase offer.
In an order filed April 24, 2006, the trial court dismissed Jones from the action, stating that he lacked standing to challenge the Stahrs' exercise of the right of first refusal. The court found in favor of Dorenbach, granting her amended cross-claim and counterclaim and stating that the Stahrs' offer to purchase dated June 29, 2005, was an invalid exercise of the Stahrs' right of first refusal. The court dismissed the Stahrs' and Coffey's claims.
In doing so, the trial court stated:
The inescapable conclusion is that Dorenbach granted the rights of first refusal to Aerts and the Stahrs to allow them to acquire the land adjacent to their homes rather than have the land be acquired by a third party. In other words, these rights of first refusal permitted Aerts and the Stahrs to have some control over the ownership of the land adjacent to their homes. The court finds that the right of first refusal was personal to the Stahrs and was not assignable. Therefore, when their June 29, 2005 offer to purchase included the provision for assignment, this constituted a material deviation from the offer by Jones and it is not binding upon Dorenbach.
The Stahrs and Coffey appeal.

ASSIGNMENTS OF ERROR
On appeal, the Stahrs and Coffey argue that the trial court erred (1) in finding that the right of first refusal granted to the Stahrs was personal and could not be assigned and in basing its decision on testimony from Dorenbach, (2) in finding that the Stahrs did not have a valid and enforceable agreement to purchase the property from Dorenbach because they inserted language into the purchase agreement reserving their right to assign their interest in the agreement prior to closing, and (3) in finding that the Stahrs' exercise of their right of first refusal was invalid because it was a material deviation from the offer made by Jones.

STANDARD OF REVIEW
[1-3] An action for specific performance sounds in equity, and on appeal, an appellate court decides factual questions de novo on the record. See Mogensen v. Mogensen, 273 Neb. 208, 729 N.W.2d 44 *399 (2007). When considering an appeal in an action for specific performance, an appellate court will resolve questions of fact and law independently of the trial court's conclusions. See id. In reviewing an equity action, when credible evidence is in conflict on material issues of fact, the court may consider and give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another. See id.

ANALYSIS

Right of First Refusal.
[4] On appeal, the Stahrs and Coffey argue that the trial court erred in finding that the right of first refusal granted to the Stahrs by Dorenbach was personal in nature and could not be assigned. Dorenbach disagrees and cites Schupack v. McDonald's System, Inc., 200 Neb. 485, 264 N.W.2d 827 (1978), in support of her position. Although generally the law supports assignability of rights, it does not permit assignments for matters of personal trust or confidence, or for personal services. See id.
[5] The district court recognized that in the absence of language indicating that a right of first refusal is assignable or would pass to the grantee's heirs, the right is personal. As the Maryland Court of Appeals explained in Park Station v. Bosse, 378 Md. 122, 835 A.2d 646 (2003), rights of first refusal are presumed to be personal and are not ordinarily construed as transferable or assignable unless the particular clause granting the right refers to successors or assigns or the instrument otherwise shows that the right was intended to be transferable or assignable. The opinion of the Maryland court cites numerous supporting cases from many jurisdictions. Accord, 77 Am.Jur.2d Vendor and Purchaser § 34 (2006); Jonathan F. Mitchell, Can a Right of First Refusal Be Assigned?, 68 U. Chi. L.Rev. 985 (2001); 3 Eric Mills Holmes, Corbin on Contracts § 11.15 (Joseph M. Perillo ed., rev. ed.1996).
Although many of the decisions from other jurisdictions presume the right is personal in order to avoid a conflict with the rule against perpetuities, other reasons also support the rule. For example, the court in Old Nat'l Bank v. Arneson, 54 Wash.App. 717, 776 P.2d 145 (1989), explained that the holder of a right of first refusal holds only a general contract right to acquire a later interest in real estate should the property owner decide to sell. In that event, a new contract ensues under which the preemptive holder may receive an interest in land.

Significance of Decisions to Sell and to Accept Terms.
[6] While the district court focused on the nature of the right of first refusal prior to Dorenbach's decisions to sell the remaining real estate and to accept the terms of Jones' offer, the court overlooked these decisions. Once Dorenbach determined to sell and found Jones' offer acceptable, the Stahrs' right of first refusal ripened into an option contract.
[7] In Winberg v. Cimfel, 248 Neb. 71, 532 N.W.2d 35 (1995), the Nebraska Supreme Court relied upon the distinction between an option and a right of first refusal discussed in a treatise by Samuel Williston. As the court noted, a right of first refusal has no binding effect unless the offeror decides to sell. "The `right of first refusal' or `preemption' is conditioned upon the willingness of the owner to sell; it can be enforced by specific performance where such willingness can be proved." 25 Samuel Williston, A Treatise on the Law of Contracts § 67:85 at 503-04 (Richard A. Lord ed., 4th ed.2002). Stated another way, "the right is subject to an agreed *400 condition precedent, typically the owner's receipt of an offer from a third party and the owner's good-faith decision to accept it." 3 Holmes, supra, § 11.3 at 470.
[8] "[T]he occurrence of these events (owner's receipt of an offer and the good-faith decision to accept it) satisfies the condition precedent, which `triggers' the right of first refusal that `ripens' into an option." Id. at 470-71. See, e.g., Smith v. Hevro Realty Corp., 199 Conn. 330, 507 A.2d 980 (1986).
[9] "In nearly all jurisdictions the option holder's rights in an option supported by consideration are assignable in the absence of any words of assignability, except of course, where the nature or terms of the option bring it within some recognized exception." 3 Holmes, supra, § 11.15 at 586.
We do not read the decision of the Nebraska Supreme Court in Schupack v. McDonald's System, Inc., 200 Neb. 485, 264 N.W.2d 827 (1978), as inconsistent with the law of other jurisdictions. In Schupack, the plaintiffs brought suit against McDonald's Corporation and McDonald's System, Inc. (collectively McDonald's), seeking a declaratory judgment to determine the respective rights and obligations of the parties under a right of first refusal originally granted by McDonald's to Bernard L. Copeland. The plaintiffs contended that the right of first refusal was transferred and conveyed to them in 1964 by Copeland and his partner when they sold all their interest in various McDonald's franchises in Omaha, Nebraska, and Council Bluffs, Iowa, to the plaintiffs. In other words, the assignment occurred before McDonald's had decided to develop additional locations. Moreover, as we observe below, the Schupack decision was driven by the continuing nature of the franchise relationship.
The right of first refusal in Schupack allowed the possessor of the right of first refusal to acquire additional McDonald's franchises which might be developed in the future by McDonald's in the Omaha-Council Bluffs area. The suit arose because McDonald's granted a franchise in Bellevue, Nebraska, to someone other than the plaintiffs. The district court determined that the right of first refusal was not personal to Copeland and his partner, but that the Omaha area did not encompass Bellevue. McDonald's appealed, and the plaintiffs cross-appealed.
The Supreme Court held that the right of first refusal was intended to be personal in nature to Copeland and could not be transferred or assigned without the consent of McDonald's and that McDonald's had not consented to a transfer of the right of first refusal from Copeland to the plaintiffs. Therefore, the Supreme Court held that the plaintiffs possessed no right of first refusal to additional McDonald's franchises in the Omaha-Council Bluffs area and dismissed the plaintiffs' action.
In doing so, the Supreme Court noted that whether a right of first refusal is personal and thus not assignable without the consent of the grantor is to be resolved by ascertaining the intent of the parties to the transaction. Additionally, the court stated that the intention of the parties is to be ascertained from the contract, its nature, and the attending circumstances. Id. The Schupack decision addressed franchise rights rather than an interest in real estate. A poorly managed franchise can stain the reputation of the remainder of a nationwide chain of such businesses. The relationship between franchisor and franchisee is usually continuing in nature.
On the other hand, where the seller is disposing of his or her entire interest in real estate, the decision to sell severs any such continuing relationship. Dorenbach *401 does not argue that she would have any continuing relationship to the property or to the Stahrs after the sale was completed. We assume that prior to any decision by Dorenbach to sell the real estate, the right of first refusal remained personal to the Stahrs. But once she decided both to sell the real estate and to accept the terms of Jones' offer, the Stahrs' right of first refusal ripened into an option. The Stahrs exercised the option by tendering their acceptance to Dorenbach.

Material Deviation.
[10] The Stahrs and Coffey argue that the trial court erred in finding that the Stahrs did not have a valid and enforceable agreement to purchase the property from Dorenbach because they inserted language into the purchase agreement reserving their right to assign their interest in the agreement prior to closing. They also contend that the trial court erred in finding that the exercise of the Stahrs' right of first refusal was invalid because it was a material deviation from the offer made by Jones.
[11] Acceptance of an offer to buy or sell real estate must be an unconditional acceptance of the offer as made; otherwise, no contract is formed; and there must be no substantial variation between the offer and the acceptance, since if such acceptance differs from the offer or is coupled with any condition that varies or adds to it, it is not an acceptance, but a counterproposition. See Anderson v. Stewart, 149 Neb. 660, 32 N.W.2d 140 (1948). See, also, Logan Ranch v. Farm Credit Bank, 238 Neb. 814, 472 N.W.2d 704 (1991).
As we have already described, there is no dispute that Dorenbach decided to sell, that she received an offer from Jones, and that she decided to accept the offer. At that time, the Stahrs' right of first refusal ripened into an option, which they then proceeded to exercise. As such options are assignable by the option holder, the language of the Stahrs' acceptance, which merely reserved the right to assign, did not constitute a material variation from Jones' offer.
At oral argument, Dorenbach's counsel conceded that if the Stahrs' right was assignable, the contested provision did not constitute a material variation. While it may not have been assignable before Dorenbach decided to accept Jones' offer, once she did, the right of first refusal ripened into an assignable option. It follows that the Stahrs' acceptance was binding and that the "ripened option" thereby became an enforceable contract. The district court erred in finding that the reservation of the right to assign constituted a material deviation from the terms of Jones' offer.

CONCLUSION
When Dorenbach decided both to sell the real estate and to accept Jones' offer, the Stahrs' right of first refusal ripened into an option contract. Because option contracts are assignable by the optionee, the Stahrs' reservation of the right to assign was not a material deviation from Jones' offer. The district court erred in finding a material deviation. We reverse the judgment of the district court and remand with direction to grant specific performance to the Stahrs.
REVERSED AND REMANDED WITH DIRECTION.
CARLSON, Judge, dissenting.
I respectfully dissent from the majority's opinion, given my conclusion that regardless of whether the Stahrs' ability to purchase Dorenbach's property is considered a right of first refusal or an "option," there is sufficient evidence on this record to show that the Stahrs' right, or option, to *402 purchase Dorenbach's property was too personal in character to permit assignment.
The majority states that the Stahrs' right of first refusal ripened into an option once Dorenbach accepted Jones' offer to purchase. Assuming that this is true, one must still consider whether the Stahrs' option to purchase Dorenbach's property was assignable. As the majority states, "In nearly all jurisdictions the option holder's rights in an option supported by consideration are assignable in the absence of any words of assignability, except of course, where the nature or terms of the option bring it within some recognized exception." 3 Eric Mills Holmes, Corbin on Contracts § 11.15 at 586 (Joseph M. Perillo ed., rev. ed.1996).
Although generally the law supports assignability of rights, it does not permit assignments for matters of personal trust or confidence, or for personal services. Eli's, Inc. v. Lemen, 256 Neb. 515, 591 N.W.2d 543 (1999), citing Schupack v. McDonald's System, Inc., 200 Neb. 485, 264 N.W.2d 827 (1978); Earth Science Labs., v. Adkins & Wondra, P.C., 246 Neb. 798, 523 N.W.2d 254 (1994); Andersen v. Ganz, 6 Neb.App. 224, 572 N.W.2d 414 (1997).
The Nebraska Supreme Court has stated that whether rights and duties under a contract are too personal in character to permit assignment is a question of construction to be resolved from the nature of the contract and the express or presumed intention of the parties. Schupack v. McDonald's System, Inc., supra. Additionally, the court stated that the intention of the parties is to be ascertained from the contract, its nature, and the attending circumstances. Id.
In the instant case, the right of first refusal granted by Dorenbach to the Stahrs states as follows:
Buyer [the Stahrs] acknowledges that Seller [Dorenbach] has previously granted to . . . Aerts a right of first refusal to fifteen (15) acres adjacent to Property. . . . However, subject to that right of first refusal held by . . . Aerts, Seller [Dorenbach] does grant a subordinate right of first refusal to Buyer [the Stahrs] on the land retained by Seller [Dorenbach], comprising approximately one hundred twenty seven (127) acres, more or less.
The record shows that on June 27, 2005, Jones submitted an offer to Dorenbach to purchase her remaining property. Jones offered Dorenbach $550,000 for the property, and his offer was conditioned upon his ability to obtain a $400,000 loan. On June 28, Dorenbach accepted Jones* offer. The Stahrs then exercised their right of first refusal, offering to purchase Dorenbach's property for the same price. In the Stahrs' agreement, they stated that they would be paying the purchase price entirely in cash, and the Stahrs inserted the following language in their purchase agreement: "Buyer [the Stahrs] reserves the right to assign this contract to a third party prior to closing."
In a letter dated July 20, 2005, Dorenbach's attorney informed the Stahrs that their offer was not acceptable; specifically, the letter states:
When this was entered into, [Dorenbach] intended the right of refusal to be personal to you and she is not willing to allow it to be assigned in any manner. [Dorenbach] is also bothered by the fact that your purchase agreement indicates that the payment will be "all cash," yet it has come to our attention that there will be a loan from Hastings State Bank which has some contingencies.
At trial, Dorenbach testified that when negotiating with Daniel in 1998 for the sale *403 of her land, Daniel brought up the idea of the right of first refusal. Dorenbach stated that Daniel indicated that he wanted the right of first refusal for himself. Dorenbach testified that she and Daniel did not discuss the Stahrs' ability to assign the right. Dorenbach testified that she gave the Stahrs the first right of refusal "on the feeling that in good faith it was for [Daniel] and [Daniel] only." Dorenbach testified that she would not have agreed to the right of first refusal if it had contained language allowing the right to be assigned.
Dorenbach testified that she granted Aerts a right of first refusal to 15 acres of her property because Aerts, her neighbor, told her that he wanted to buy additional property adjacent to his own so that no one could build close to his property. Daniel testified that when he spoke to Dorenbach's son about the right of first refusal, Daniel mentioned that he wanted to have the option to purchase the property adjacent to the land he purchased from Dorenbach in 1998 if he could afford it. Daniel testified that he and Dorenbach never discussed whether the right of first refusal would be assignable.
In the instant case, the trial court reviewed the right of refusal Dorenbach granted to the Stahrs, its nature, and the attending circumstances in concluding that the right of first refusal Dorenbach granted to the Stahrs in 1998 was personal in nature and could not be assigned by the Stahrs. The trial court relied on Dorenbach's testimony at trial that she considered the right to be personal to the Stahrs and that she did not want the right of first refusal to be assigned. The trial court went on to state:
The inescapable conclusion is that Dorenbach granted the rights of first refusal to Aerts and the Stahrs to allow them to acquire the land adjacent to their homes rather than have the land be acquired by a third party. In other words, these rights of first refusal permitted Aerts and the Stahrs to have some control over the ownership of the land adjacent to their homes. The court finds that the right of first refusal was personal to the Stahrs and was not assignable.
After reviewing de novo the trial court's determination that the right of first refusal was personal, and keeping in mind that the trial court observed the witnesses and accepted Dorenbach's version of the facts, I cannot say that the trial court erred in so finding.
After concluding that the right of first refusal was personal in nature, the trial court stated, "Therefore, when [the Stahrs'] June 29, 2005 offer to purchase included the provision for assignment, this constituted a material deviation from the offer by Jones and it is not binding upon Dorenbach." Given my conclusion that the trial court did not err in finding that the right or option granted to the Stahrs by Dorenbach was personal in nature and not assignable, it follows that by virtue of the Stahrs' inserting language into the purchase agreement reserving their right to assign their interest in the agreement prior to closing, the Stahrs' exercise of that right of first refusal became invalid because it was a material deviation from the offer made by Jones.
Acceptance of an offer to buy or sell real estate must be an unconditional acceptance of the offer as made; otherwise, no contract is formed; and there must be no substantial variation between the offer and the acceptance, since if such acceptance differs from the offer or is coupled with any condition that varies or adds to it, it is not an acceptance, but a counterproposition. See Anderson v. Stewart, 149 Neb. *404 660, 32 N.W.2d 140 (1948). See, also, Logan Ranch v. Farm Credit Bank, 238 Neb. 814, 472 N.W.2d 704 (1991). I cannot conclude that the trial court erred in this regard either, and therefore, I would affirm the judgment of the trial court.