REINERS, Guardian, Appellant v. SHERARD et al., Respondents

SHERARD et al., Respondents v. REINERS, Individually and as Guardian, Appellants

(233 N.W.2d 579)

(File No. 11560. Opinion filed October 3, 1975)

**Robert J. Haar,** Viborg, and **Gale E. Fisher** of **May, Johnson & Burke,** Sioux Falls, for plaintiff-appellant, Reiners.

**Samuel W. Masten,** Canton, for defendant-respondent, Sherard.

DOYLE, Justice.

This case is a consolidation of two actions. The first action was brought by Margaret Reiners, guardian of Andrew Reiners,[1] for an accounting of the profits of a partnership between Andrew Reiners and Claude Sherard. The second action was a foreclosure action brought by Claude Sherard against Andrew Reiners. In the accounting action, the trial court found that Reiners owed Sherard approximately $18,950.14 with interest. In the foreclosure action, the trial court found Sherard held a valid mortgage on property owned by Reiners and that Sherard could foreclose the mortgage.

The facts of this case demonstrate the unfortunate results which accrue when good friends or relatives become partners and fail to keep adequate records. At the dissolution of the partnership, it too often happens that a clear view of the initial agreement is clouded by the years and there is suspicion on both sides that one partner has taken advantage of the other. So it appears to be here.

Reiners first came into contact with Sherard when Reiners was twelve or thirteen years old. Sherard was already a successful farmer and Reiners was a boy without a good home. Sherard took Reiners into his care and treated him as he would a son. In 1949, Sherard and Reiners entered into a livestock feeding partnership in which they were to share equally in profits and losses.

---

1. References to Andrew Reiners, as a litigant, should hereafter be taken to mean Margaret Reiners, as guardian of Andrew Reiners.

To finance the partnership operation, they obtained a line of credit from the Yankton Production Credit Association (PCA). During the next nineteen years the two men treated their account with PCA as a common fund. Whenever either sold cattle or sheep, the proceeds were deposited with PCA to pay off current loans. Whenever either needed cash with which to pay for ongoing personal expenses, as for food or clothing, or to pay for expenses of the farming operation, he merely wrote a draft on the PCA account and deposited it in his own account. Each purchased real property in his individual name with funds from the PCA account. No annual accounting of profits and losses was ever made. No attempt was apparently made to assure that each partner withdrew an equal amount for personal or living expenses.

*I. The Real Property.*

■ The first issue is whether the trial court erred in finding that the real property purchased with partnership funds became property of the individual partners and not of the partnership.[2] We find that the trial court's determination was correct.

The applicable statutory law is stated in SDCL 48-4-2:

> "Unless the contrary intention appears, property acquired with partnership funds is partnership property."

This statute thus creates a rebuttable presumption that property purchased with partnership money becomes partnership property. *Kook v. American Sur. Co. of N.Y.*, 1965, 88 N.J.Super. 43, 210 A.2d 633. However, the "presumption * * * is rebuttable and the same is true with respect to the presumption that the partnership owns the property that it uses in the conduct of the firm business." Barrett and Seago, Partners and Partnerships, C. 3, § 3.2, p. 175. The evidence necessary to overcome the

---

2. If the court finds that the property is that of the partnership, it will be included in the partnership assets at the value which it had when the partnership was dissolved. If, on the other hand, the court finds that the property was that of the individuals, the holder of the property will only be required to pay back the price he withdrew from partnership funds to purchase the property.

presumption was introduced at trial. Thus the presumption, because it is a presumption of law, dissipated and had no further evidentiary weight. *In Re Houda's Estate,* 1956, 76 S.D. 388, 79 N.W.2d 289.

 The trial court, then, was left to balance the facts presented to it. Several factors were urged on the court as favorable to the finding that the land, was property of the partnership. First, of course, the land had been purchased with partnership funds and taxes on it had been paid with partnership funds. However, we believe that the probative value of these facts is severely limited in this case because of the manner in which the two men conducted their affairs. Each drew funds for every personal or business purpose conceivable from the same PCA account. To say that these funds could be used only to purchase property for the partnership would be to say that the partners had intended to have little or no property in their individual names. Thus, we agree with the trial court in its finding that the mere payment of taxes and of the purchase price of property is not persuasive when such payments come from a common fund used by both partners for all expenses. Furthermore, the cases are explicit in their view that the property purchased with partnership funds does not automatically become the property of the partnership. See, e. g., *Kook v. American Sur. Co. of N. Y.,* supra; *Block v. Schmidt,* 1941, 296 Mich. 610, 296 N.W. 698.

The plaintiff further argues that the fact that the crops from the land in question were used in the partnership feeding business should lead to a finding that the land was intended to be partnership property. Again, however, the mere fact that the partnership uses property is not dispositive. In *Norcross v. Gingery,* 1967, 181 Neb. 783, 150 N.W.2d 919, the court held, "Use of the property alone is not sufficient because an owner may intend to contribute only the use, as distinguished from the ownership, to the partnership."

Finally, the plaintiff would argue that even if these particular factors alone do not persuade the court that the property is partnership property, the facts together should. *Gertz v. Fontecchio,* 1951, 331 Mich. 165, 49 N.W.2d 121, adequately

answers this contention. "Property acquired with partnership funds or by the partners individually for the use of the partnership does not necessarily constitute a partnership asset. In the absence of supervening rights of creditors, such property may, as between the partners, at least, be owned by them individually as tenants in common or otherwise, as distinguished from the partnership, *if such was their intention* in the acquisition and holding thereof." (emphasis supplied).

■ Thus, although Reiners is undoubtedly correct in stating that the ownership of the land by a partnership may sometimes be shown by the payment of purchase price, taxes and by the use of the land, 60 Am.Jur.2d, Partnership, § 95, no single factor or combination of factors is necessarily dispositive of the issue. Each case presents a search for the intent of the parties and this search must be more than a mechanical application of rules designed merely to be aids in the finding of intent. 60 Am.Jur.2d, Partnership, § 93.

■ The trial court, in its review of all the facts and circumstances which evidenced the intent of the parties, found that the partners did not intend the land in question to be the property of the partnership. Several factors support this conclusion. First, none of the land was ever listed in applications to PCA as a partnership asset. Instead, the land was listed in the names of the individuals, i. e., "Sherard owns 560 acres and Reiners owns 320." Second, the partners once traded certain tracts of the land in question to each other. Such conduct would, of course, be illogical and unnecessary if the partnership owned the land. Cf., *Gertz v. Fontecchio,* supra. Third, there was no evidence that either man ever made a representation to anyone before the commencement of this litigation that the land farmed by the partnership was the property of the partnership. We find the factors cited above in support of the trial court's determination to be persuasive. It is not, however, our function to be the finder of facts but only to determine whether the trial court's determination was "clearly erroneous" in accordance with SDCL 15-6-52(a). We find that the trial court's determination was not "clearly erroneous."

## II. *The Foreclosure Issue.*

The facts pertinent to the foreclosure issue bear additional examination. On October 9, 1967, Reiners and Sherard completed a PCA application to renew their present loan and obtain additional advances for the coming year. They also executed a promissory note and a security agreement encompassing all of the chattels of the partnership. PCA, however, indicated a need for more security and approached the two men to make arrangements to accomplish this. Sherard agreed to pay PCA $45,000 cash to reduce the amount of the loan. This he did in early 1968. Reiners, for his part, executed a $45,000 "collateral note" due on October 1, 1970, a real estate mortgage securing payment of the note and a "collateral agreement." The agreement specified that the mortgage and "collateral note" were given as "collateral security" for the $381,728.27 loan to the partnership and that the agreement would remain in force until the debt was paid in full.

On October 15, 1970, after the debt was in default, Sherard paid PCA the balance of $17,936.29, noting on his check the words "to pay Sherard & Reiners Loan." PCA simultaneously purported to assign to Sherard the "collateral note" and mortgage which Reiners had given it.

■ The issue thus presented is whether the assignment of the mortgage from PCA to Sherard was valid.

The applicable statutory law is SDCL 20-4-2 which states:

> "Performance of an obligation, by one of several persons who are jointly liable under it, extinguishes the liability of all."

Thus, if Sherard was jointly liable for the debt when he paid PCA the $17,936.29, his payment extinguished both his liability and that of Reiners; furthermore, the payment would necessarily extinguish the mortgage which Reiners had given as there would be no underlying debt to support it. 55 Am.Jur.2d, Mortgages, § 394; Thompson on Real Property, Vol. 9, § 4813, p. 663.

We find that the payment did, in fact, operate to extinguish a joint liability of the two men, that the mortgage was thereby

extinguished and that consequently there was no valid assignment thereof.

Our finding is based on the conclusion that the joint liability of the two men existed until the final Sherard payment of $17,936.29.

■ The trial court apparently found that Sherard and Reiners had made an agreement between themselves that each would pay $45,000 of the debt. Such an agreement is, of course, permissible. *B—OK, Inc. v. Storey,* 1970, 3 Wash.App. 226, 473 P.2d 426. However, contrary to the apparent assumption of the trial court, the agreement between the two men did not discharge or make irrelevant the joint liability to PCA; this could occur only with the consent of PCA. As stated in *B—OK, Inc. v. Storey,* supra:

> "while partners can agree to alter their respective liabilities in terms of existing partnership creditors, and create these relationships * * * liability between the partners and the partnership creditors remains joint, absent agreement with or consent of creditors." 473 P.2d at 429.

It is our determination that no such agreement or consent occurred. First, the documents themselves indicate that PCA did not consider the joint liability of the partnership extinguished in the amount of $45,000 when Reiners gave his "collateral agreement," "collateral note" and mortgage. Indeed, the collateral agreement, in seven separate places, speaks of the Reiners documents as securing the debt of the "undersigned and Claude Sherard," and also notes that this debt was $381,728.27—the entire amount due from the partnership. Furthermore, PCA did not reduce the amount due it from the partnership at the time it accepted the Reiners documents. Thus it seems clear that there was no agreement between PCA and the partnership or either of the partners to release Sherard from his joint liability. Both Sherard and Reiners remained jointly liable for the entire partnership debt until Sherard made his final $17,936.29 payment.

This payment therefore operated by the terms of SDCL 20-4-2 to extinguish the still remaining joint obligation of the two men. The purported assignment must fail because the mortgage, which was given for the express purpose of securing the partnership debt, was also extinguished for the reason that there was no remaining underlying debt. In addition, the "collateral note" given by Reiners did not remain to support the mortgage because it, too, was given for the express purpose of securing the partnership debt.

Sherard implies, however, that he did not intend to pay the joint obligation even if it existed. He intended, he states, to take only an assignment of the Reiners note and mortgage. Even so, his claim must fail. *Hazel v. Sharum*, 1930, 182 Ark. 557, 32 S.W.2d 315, considered a situation analogous to our own. The facts in that case were that a representative of one of several joint obligers paid a joint obligation and simultaneously took an assignment of the note. The court rejected the payor's contention that the assignment was valid, stating that because the payor was himself primarily liable, "the assignment of the note * * * was ineffectual in preserving * * * a right of action based on the note * * *." See 10 C.J.S. Bills and Notes § 449, at 986.

Thus, in our case, it is clear that the partnership note could not itself have been preserved. Furthermore, we have found no case nor have we found support in logic to justify preservation of a collateral note and mortgage which were given to secure a note which could not itself be preserved. Indeed, such a finding would destroy, for all practical purposes, the rule of law set out in *Hazel v. Sharum*, supra.

Finally, Sherard contends that certain language in 55 Am.Jur.2d, Mortgages, § 394, lends support to his cause. The language states that a mortgage may be kept alive to conform to the intention of the parties. A reading of the cases supporting the citation, however, indicates that a full statement of the rule apparently is that a mortgage may be kept alive to conform to the intent of the mortgagor and mortgagee at the time of the payment of the underlying debt. See *Albers v. Westberg*, 1939, 299 Ill.App. 41, 19 N.E.2d 436; cf., Thompson on Real Property,

Vol. 9, § 4813, at 664-665. It · is clear that Reiners, the mortgagor, did not at the time of payment evidence any intent to have the mortgage against him kept alive.

In summary, we find that the trial court erred in entering its order of foreclosure of the Reiners mortgage after Sherard had paid the partnership debt and taken the purported assignment.

█ This is not to say, however, that Sherard has no recourse. While he is not entitled to a suit on the partnership note or on Reiners' note or mortgage, he is entitled to contribution under either SDCL 20-1-6 (see *Harris v. King*, 1931, 113 Cal.App. 357, 298 P. 100; 10 C.J.S. Bills and Notes § 449, at 986) or under SDCL 48-3-2.

Affirmed in part and reversed and remanded in part for proceedings not inconsistent with this opinion.

All the Justices concur.