**Oscar BACHAND, Appellant,**

v.

**Bruce J. WALKER, Appellee.**

No. 16692.

Supreme Court of South Dakota.

Argued March 20, 1990.

Decided May 9, 1990.

Steven C. Beardsley and Jon C. Sogn of Lynn, Jackson, Shultz & Lebrun, P.C., Rapid City, for appellant.

Ronald W. Banks of Banks, Johnson, Johnson, Colbath, and Huffman, P.C., Rapid City, for appellee.

HERTZ, Circuit Judge.

Oscar Bachand (Bachand) appeals from a trial court judgment in favor of Bruce J. Walker (Walker). The dispute on appeal primarily concerns the ownership of certain real property. Bachand claims he is entitled to one-half interest in the real property

by virtue of an alleged oral agreement with Walker. The trial court found Walker to be the owner of the real property and excluded the property from any consideration as partnership property. Bachand further appeals from the trial court decision relating to certain errors in accounting, denial of bonus credits, and the failure of the trial court to impanel a jury to try claimed fraud issues. We affirm in part, reverse in part, and remand.

## STATEMENT OF FACTS

Walker began doing business with Bachand in 1964 when Bachand ran and cared for Walker's 200 heifers pursuant to an agreement where Bachand would receive sixty percent of the calf crop. The agreement was not reduced to writing. At this time Bachand was to run the heifers on land he owned. In 1965 Bachand's land was foreclosed; however, he continued to live on the premises for several more years. In any case, this agreement worked out satisfactorily for both parties.

In 1969, Walker became interested in acquiring the Laura Lovgren Ranch. Bachand testified that Walker asked him to look at the ranch and if he (Bachand) liked it "we'll buy it." Bachand interpreted this statement to mean that Walker and Bachand would purchase the land as partners.

On October 20, 1969, Walker and his wife, Carol, entered into a contract to purchase the Lovgren ranch, together with its machinery, improvements and livestock for a total price of $165,000. They paid $20,000 down, and agreed to pay $5,000 annually for 18 years with a $49,000 balloon payment due in December 1989.

Bachand moved onto the ranch in the fall of 1969. Bachand and Walker executed a written partnership agreement effective January 1, 1970. Walker contributed 185 bred cows and some machinery. Bachand contributed some machinery and claims he also contributed some bred heifers. The net disparity in capital contributions was reconciled when Bachand executed a $21,500 promissory note to Walker.

The partnership agreement does not describe or include the real estate as a partnership asset. The agreement provides that the partnership business consists of a ranch operation located on the real estate in question. The real estate taxes were Walker's responsibility. Personal property taxes on the machinery and livestock were to be borne equally by the partners. Walker was to be solely responsible for any building improvements in excess of $500. The partnership income was to be divided on a 50/50 basis, and included any income derived from mineral leases and the sale of gravel. Another provision expressly provided that because Walker was allowing proceeds from the sale of gravel or oil leases to become partnership income, fences or fence repairs would be considered operating expenses borne by the partnership.

Walker delivered a copy of the written partnership agreement to Bachand and asked him to read it. Bachand testified it took him two to four minutes to read it, and that at this time he did not notice that the land was not mentioned as a partnership asset. The agreement was signed by both Bachand and Walker, with Bachand's wife, Charlotte, and Walker's wife, Carol, signing as witnesses.

Bachand later testified that after Walker left he re-read the contract and discovered that there was nothing in the contract about the land. He did not mention this claimed omission to Walker until about three weeks later. Bachand testified that when he mentioned to Walker that the land was not described as a partnership asset, Walker allegedly replied, "I couldn't put nothing in there about the land because I [Bachand] had a judgment against me." In the sixteen and one-half years following, Bachand claims he did not press the ownership of the land because he "trusted" Walker.

Bachand claims that prior to the execution of the written partnership agreement there was an oral agreement that the land was to become a partnership asset. Walker denies there ever was such an agreement. Although Walker testified on adverse examination that he did not know or recollect whether such a discussion ever

occurred, he also testified that the land was not a part of the partnership. He and his wife purchased the land. He further insisted many times that the partnership property consisted only of livestock and machinery.

Walker's wife Carol testified that she was present at the time the written partnership agreement was signed and that there was no discussion about including the land as a partnership asset at that time or anytime thereafter. She never was aware of Bachand's claimed interest in the land until he filed this lawsuit.

The trial court resolved this conflicting testimony by its finding that there was no oral agreement respecting either a partnership ownership or an equal ownership in the land in question.

During the course of the partnership, each party made certain draws on partnership funds. The accounting indicates Bachand's total draw was $241,572, and Walker's draw was approximately $225,000.

None of Bachand's draws were applied to the payments due on the land. Walker made payments of $211,600 toward the purchase of the ranch land. Bachand's expert CPA, Wilbur Blundell, testified that all but two of the payments on the land were made from draws charged to Walker and, further, if such payments were to be regarded as a purchase of the partnership, Walker would still be owed all the draws. Additionally, it is undisputed that Walker paid $51,000 in real property taxes and $8,000 toward capital improvements, all of which were made from draws charged to Walker.

There are three issues to be resolved on appeal:

I. Whether the equitable action of accounting fully disposed of the claims of Bachand, thereby negating a jury trial on allegations founded on fraud?

II. Whether the trial court erred in denying Bachand certain "bonus" credits?

III. Whether the trial court's determination that there was no oral agreement between the parties regarding the purchase of the ranch land is supported by the evidence?

■ The standard of our review is governed by SDCL 15–6–52(a). Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. This court will not overturn the trial court's decision unless, after reviewing all the evidence, it is left with a definite and firm conviction that a mistake has been made. *Smith v. Sponheim,* 399 N.W.2d 899 (S.D.1987). With this standard in mind, we address the issues raised by the appeal.

I. Whether the equitable action of accounting fully disposed of the claims of Bachand, thereby negating a jury trial on allegations founded on fraud?

■ Bachand claims the trial court erred in refusing to permit a jury trial on the allegations of fraud set forth in his amended complaint.

Prior to the trial to the court, counsel for Bachand asked the court what issues would be tried. Counsel indicated that he understood the issues of the accounting of the partnership, breach of the contract as to the partnership and as to the land, part performance as it related to the statute of frauds and as to estoppel were to be tried. Counsel further stated that he understood the issues of fraud and conversion would be tried to a jury. The trial court agreed these issues would be tried to the court, and said, "The issues later on of fraud, deceit and conversion would be given to the jury, if such is left, you know." At a pre-trial conference on November 28, 1988, the court indicated that all equitable issues would be tried to the court and stated, "And then when we get done with that we'll try it to the jury if there is anything left."

The trial court entered findings of fact on the breach of contract, land claims, and the accounting, and concluded that the court trial on these issues fully disposed of all of Bachand's claims, making a jury trial on the fraud claim unnecessary. We determine, with the exceptions noted, that the findings are not clearly erroneous and are supported by competent evidence.

The amended complaint alleges an oral agreement for a 50/50 purchase of the land. On the first day of trial an additional prayer for specific performance was allowed as an amendment to the complaint.

In *Ellenbecker v. Volin*, 75 S.D. 604, 609, 71 N.W.2d 208, 210 (1955), this court adopted the rule that:

> An accounting and settlement between copartners is a condition precedent to an action by one against the other on partnership claims and transactions for the following principal reasons: (1) A dispute of this nature ordinarily involves the taking of a partnership account, for, until that is taken, it cannot be known but that the plaintiff may be liable to refund even more than he claims in the particular suit. (2) In partnership transactions a partner does not as a rule become the creditor or the debtor of a copartner, but of the firm. (3) Such a suit would necessitate that the party complained of be both plaintiff and defendant. (4) One partner does not own or have a right to any specific portion of the partnership property.

In *Munce v. Munce*, 77 S.D. 594, 96 N.W.2d 661 (1959), this court reaffirmed the *Ellenbecker, supra*, rule and held that the trial court was correct in striking from the complaint an action at law for conspiracy to defraud since no accounting had occurred.

We have held that when an action is one of equitable cognizance, the right to grant full and complete relief, legal and equitable, attaches. *Black v. Gardner*, 320 N.W.2d 153 (S.D.1982).

Bachand claims there were at least fourteen different instances of fraud and deceit.

Bachand claims that the first instance of fraud was Walker's failure to honor the terms of the oral contract relating to the land. It is clear this issue was tried to the court with the consent of all the parties. This was part of Bachand's breach of contract claim. The trial court found there was no oral agreement, concluded that the land was not a partnership asset, and excluded the land from the accounting. Ab-

sent the validity of the oral agreement, Bachand has no claim of fraud. The trial court was not clearly erroneous in entering this finding.

An examination of the thirteen remaining claimed instances of fraud reveals that all deal with claimed errors in record keeping by Walker. The actual accounting cleared up any discrepancy in credits or draws of the respective partners. Thus the trial court was correct in concluding all claims of Bachand had been fully resolved by the accounting, and in refusing to allow a jury trial on the various alleged fraud claims.

II. Whether the trial court erred in denying Bachand credit for certain "bonus" credits?

■ Throughout the years the partnership operated, it is undisputed that Bachand performed the large majority of the manual labor required to operate the ranch. In the years 1981–1985, when Walker's health was very poor, Bachand did all of the ranching labor himself. Recognizing this, Walker gave Bachand a "bonus" or "refund." This "bonus" and/or "refund" was applied in a number of years. Walker testified that "When I allowed Oscar a bonus I deducted it from what his note was the previous year." It is quite clear that Walker's intention was that the bonuses were to reduce the amount of Bachand's promissory note. Furthermore, Walker admitted the bonuses were given in consideration of Bachand's extra efforts in operating the ranch partnership. This represented payment to Bachand for services to the partnership in addition to draws from the partnership, and were not "gifts" as Walker now claims.

The trial court, in denying Bachand credit in the accounting for the total bonus sum of $22,542, was clearly erroneous in light of Walker's own testimony. Accordingly, this item is remanded back to the trial court for recomputation of the final monetary disposition pursuant to the accounting. Included in the remand are the adjustments Walker agreed to: (1) Walker's draws should be $16,534 rather than $15,816; (2)

Walker's capital contribution should be $8,200 rather than $13,200.

III. Whether the trial court's determination that there was no oral agreement between the parties regarding the purchase of the land is supported by the evidence?

■ Unless the contrary intention appears, property acquired with partnership funds is partnership property. SDCL 48–4–2. In this case, however, Bachand's CPA expert admitted that all but two payments on the land contract were made by Walker from draws charged to him.

■ We have held that SDCL 48–4–2 creates a rebuttable presumption that property purchased with partnership money becomes partnership property. *Reiners v. Sherard,* 89 S.D. 446, 233 N.W.2d 579 (S.D. 1975). This presumption is dissipated and has no further evidentiary weight where evidence necessary to overcome the presumption has been introduced at the trial. The fact that land was purchased with money from the partnership funds and that crops from the land were used in partnership feeding business did not establish that the land was property of the partnership, particularly where partners made withdrawals from the fund for both personal and partnership purposes. Property purchased with partnership funds does not automatically become the property of the partnership. No single factor or combination of factors is necessarily dispositive of the issue. *Reiners, supra.*

■ Legal title is at least prima facie evidence of actual ownership so that where land is previously owned by a partner individually, the fact that he retains title after formation of the partnership is evidence that the land is not donated as a partnership asset. 59A Am.Jur.2d *Partnership* § 380 (1987).

The trial court found that the parties did not intend the land in question to be the property of the partnership. Specifically, the evidence shows that: the contract for deed for the purchase of the land from Laura Lovgren was signed by Walker and his wife, Carol, in the fall of 1969; Bachand moved onto the Lovgren property in contemplation of a partnership agreement to be executed with Walker; a written partnership agreement was executed by Bachand and Walker on January 1, 1970. All but two of the land payments were made with checks drawn on Walker's account, accompanied by charges to Walker's partnership draw; Walker paid all real property taxes, insurance on buildings and capital improvements in excess of $500; none of Bachand's draws were used to make payments on the land contract; the partnership informational returns, reviewed each year by Bachand, never reflected the real estate as a partnership asset; and the written partnership agreement nowhere describes the land as a partnership asset. The partnership agreement provides that any income derived from mineral or gravel sales would be partnership income, thus indicating the partnership was to have use of the land as opposed to ownership of the land. Bachand was involved in two divorces subsequent to the execution of the written partnership agreement. In neither divorce did Bachand ever reveal any claimed interest under an oral agreement to the real property in question here.

The trial court found, in its review of all of the facts and circumstances which evidenced the intent of the parties, that the partners did not intend the land in question to be the property of the partnership. We find the factors cited above in support of the trial court's determination to be persuasive. Accordingly, we find that the trial court's determination was not "clearly erroneous."

We therefore affirm in part, reverse in part and remand this matter to the trial court for the reasons set forth in this opinion.

WUEST, C.J., and MORGAN, SABERS and MILLER, JJ., concur.

HERTZ, Circuit Judge, for HENDERSON, J., disqualified.