No. 117,736

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ASHLEY STEPHENS,
Special Administrator of the Estate of
RANDALL D. STEPHENS,
*Appellant*,

v.

CINDY L. AINSWORTH,
Executrix of the Estate of
WILLIAM J. LEWIS JR.,
*Appellee*.

SYLLABUS BY THE COURT

1.

An appellate court reviews a district court's findings of fact to see whether they are supported by substantial evidence, which we define as evidence that a reasonable person might accept as sufficient to support a conclusion.

2.

In determining whether substantial competent evidence supports the district court's findings, an appellate court must accept as true the evidence and all the reasonable inferences drawn from the evidence which support the district court's findings and must disregard any conflicting evidence or other inferences that might be drawn from it. An appellate court does not reweigh the evidence or assess the credibility of witnesses.

3.

A partnership is broadly defined as "an association of two or more persons to carry on as co-owners a business for profit." K.S.A. 56a-101(f). The existence of a partnership

1

may be implied from the circumstances where it appears that the individuals involved have entered into a business relationship for profit, combining their property, labor, skill, experience, or money.

4.

Where no partnership agreement is shown the Kansas Revised Uniform Partnership Act (RUPA) governs relations among the partners and between partners and the partnership.

5.

Property is partnership property if acquired in the name of (1) the partnership; or (2) one or more partners with an indication in the instruction transferring title to the property of the person's capacity as partner or of the existence of a partnership but without an indication of the name of the partnership.

6.

Property is presumed to be partnership property if purchased with partnership assets, even if not acquired in the name of the partnership or one or more partners with an indication in the instrument transferring title to the property of the person's capacity as a partner or of the existence of a partnership.

7.

Property is presumed to be separate property, even if used for partnership purposes, if acquired in the name of one or more of the partners, without an indication in the instrument transferring title to the property of the person's capacity as partners or of the existence of a partnership, and without use of partnership assets.

8.

The determining factor in these competing presumptions under the facts of this case is whether the property was purchased with partnership assets. The presumption that the property is partnership property can apply even when the partnership provides only a portion of the purchase price.

9.

RUPA creates a rebuttable presumption that property acquired with partnership funds is partnership property. Similarly, RUPA's presumption of separate property is rebuttable. In determining whether a party has rebutted either presumption no single factor or combination of factors is dispositive. Ultimately, the partners' intentions control whether property belongs to the partnership.

10.

A court determines the intent of the parties by considering all the pertinent facts and circumstances of record.

11.

Factors to aid in determining the partners' intent regarding a partnership's ownership of property include: (1) the language of any partnership agreement; (2) the use of the property in the partnership business; (3) the listing of the property as an asset and of its mortgage as a liability in the partnership books and tax returns; (4) the construction of improvements on the property at partnership expense; (5) the payment of taxes and insurance premiums on the property out of partnership funds; (6) a party's declaration of intent accompanying his act of entering the partnership; (7) the parties' conduct with respect to the property; (8) the attribution of profits or losses from the property to the partnership; (9) the use of partnership funds to maintain the property; (10)

3

whether partnership books and accounts treat property as partnership property; and (11) the parties' statements, conduct, and writings when the property was acquired.

12.

A joint tenancy may be terminated by a party's action indicating his or her intent that the property no longer be owned as joint tenants. When dealing with real property owned by two individuals as joint tenants with rights of survivorship, one of the joint tenants may sever the joint tenancy by unilaterally executing a quitclaim deed to himself or herself.

Appeal from Elk District Court; CHARLES M. HART, judge. Opinion filed January 18, 2019. Affirmed.

*Ted E. Knopp*, of Ted E. Knopp, Chtd., of Wichita, for appellant.

*Jerry D. Bogle*, of Young, Bogle, McCausland, Wells & Blanchard, P.A., of Wichita, for appellee.

Before GARDNER, P.J., ATCHESON and POWELL, JJ.

GARDNER, J.:  This case asks us to determine who owns a cabin and 120 acres of land in Elk County. That property was purchased by Randall D. Stephens and William J. Lewis Jr., both of whom are deceased. The appellant is the administrator of Stephens' estate, and the appellee is the executor of Lewis' estate but for ease of reference we refer to the parties as Stephens and Lewis. The district court ruled that the Elk County property was never partnership property so it passed to Lewis under the deed when Stephens died. Stephens appeals arguing that the Elk County property was partnership property under Kansas' partnership statutes and was awarded to him in the partnership dissolution. Although the facts pose a close question, we uphold the district court's decision.

4

Lewis and Stephens became friends in the 1970s and later married sisters. In the early 1990s, each had separate businesses. Lewis created Cytech and Stephens started a business called In-Tech. In-Tech moved into Cytech's building and operated there until 2003. In 1994, Lewis and Stephens started a general contracting business together for the primary purpose of building metal structures and began doing business as High Plains Construction. High Plains operated out of Cytech's building. Lewis and Stephens' partnership in High Plains, which is the focus of this case, was oral—no partnership agreement existed.

In 1995, Lewis and Stephens decided to build a cabin on land in Elk County owned by a mutual friend, Brian Schreck, after a previous farmhouse on Schreck's property burned down. The parties had used that property for hunting and recreation, as had their fathers before them. The new cabin was used for the mutual recreational use of the three friends and their guests. Lewis and Stephens bought 80 acres adjacent to the cabin in 1997, then purchased the 40-acre parcel that included the cabin in 2000.

Lewis and Stephens titled both parcels of land in their names personally as joint tenants with rights of survivorship without any mention of High Plains or any partnership and without any reference to themselves as partners. O'Rourke Title in Wichita prepared the deeds. The title agent for both closings advised Lewis and Stephens at closing that they were taking title as joint tenants with rights of survivorship and not as tenants in common. Lewis testified that he and Stephens wanted to take title to the land personally because they had no business or profit purpose in the property and it was intended for their personal recreational enjoyment.

The record does not reflect a specific date of dissolution of the partnership, but Lewis appears to have withdrawn from the partnership sometime between 2000 and

5

2003. Lewis testified that he ended his involvement in High Plains in 2000 or 2001 but that High Plains did business until around 2003. High Plains' last tax return was filed in 2003. Stephens concedes that the partnership was liquidated as early as 2001 and was wound up by 2004. Stephens' daughter testified that Lewis and Stephens were "severely acrimonious" by 2002 and High Plains dissolved then. She is likely correct. A partnership is dissolved where, among other circumstances, it is not reasonably practicable to carry on the partnership in conformity with the partnership agreement or with the business relationship between the partners. Dissolution in such a case is an equitable solution to the situation where "bitter and antagonistic feeling between partners has developed to the point that the partners cannot continue the partnership to their mutual advantage." *Wallace v. Sinclair*, 114 Cal. App. 2d 220, 228, 250 P.2d 154 (1952).

Upon dissolution, Lewis or Cytech owed High Plains, Stephens, and In-Tech $140,000 or more. All High Plains assets were divided and distributed by acquiescence of the partners, and all of High Plains' liabilities were settled. The record does not reflect the date at which all partnership affairs were wound up, but it was likely within a reasonable time after 2003.

When Stephens died in 2013 the Elk County property soon became the subject of litigation, with Stephens' family and Lewis both claiming exclusive ownership. Lewis sought possession of the property in accordance with his right as survivor under the deeds to the land since both deeds named Lewis and Stephens as joint tenants with the right of survivorship and made no reference to any partners or partnership. Stephens' family sought possession of the property as partnership property which had previously been distributed solely to Stephens, who had been residing on the property.

After a bench trial, the district court found that the Elk County property was never partnership property but was instead governed by the deed to the land, thus it had been owned individually by Lewis and Stephens as joint tenants with right of survivorship. As

a result, the district court awarded the property to Lewis in 2016 as the surviving joint tenant. Lewis died in 2017. The administrator of Stephens' estate appeals.

Stephens contends that the district court failed to consider the proper characteristics of partnership property from the Uniform Partnership Act (UPA) of 1914 and the Revised Uniform Partnership Act of 1997 (RUPA)—both of which were effective at different times during the property transactions. He also contends that the court erred by focusing too much on whether the property served a business purpose and that the statute of limitations bars Lewis from relitigating the partnership debt and distribution of partnership property to Stephens.

STANDARD OF REVIEW

We review the district's court's findings of law de novo, meaning we give them no deference. *Gannon v. State*, 298 Kan. 1107, 1176, 1182, 319 P.3d 1196 (2014). But the district court's determination that the property was not partnership property is a finding of fact, made after an evidentiary bench trial. On appeal, we ask whether the district court's findings of fact are supported by substantial evidence, which we define as evidence that a reasonable person might accept as sufficient to support a conclusion. *Gannon*, 298 Kan. at 1175. "Findings that are supported by substantial evidence will be upheld by an appellate court even though evidence in the record would have supported contrary findings." *Chowning v. Cannon Valley Woodwork, Inc.*, 32 Kan. App. 2d 982, 987, 93 P.3d 1210 (2004):

> "'In determining whether substantial competent evidence supports the district court's findings, appellate courts must accept as true the evidence and all the reasonable inferences drawn from the evidence which support the district court's findings and must disregard any conflicting evidence or other inferences that might be drawn from it. Accordingly, appellate courts do not reweigh the evidence or assess the credibility of

7

witnesses. [Citations omitted.]'" *Gannon v. State*, 308 Kan. 372, 382, 420 P.3d 477 (2018).

Because this court refrains from weighing conflicting evidence, assessing witness credibility, or redetermining questions of fact, this standard of review can be outcome-determinative where, as here, the record contains conflicting evidence.

ANALYSIS

*Which partnership statutes apply here?*

Stephens and Lewis had no written partnership agreement and loosely operated High Plains as a d/b/a. But the facts show they nonetheless established a partnership, broadly defined as "an association of two or more persons to carry on as co-owners a business for profit." K.S.A. 56a-101(f). The existence of a partnership may be implied from the circumstances where it appears that the individuals involved have entered into a business relationship for profit, combining their property, labor, skill, experience, or money. *Bass v. Bass*, 814 S.W.2d 38, 41 (Tenn. 1991). Such is the case here. Lewis and Stephens entered a business relationship to construct metal structures for profit, combining their property, experience, or money in High Plains.

Our inquiry focuses on whether the Elk County property was partnership property. Because the parties had no partnership agreement to govern this determination, the RUPA governs: "To the extent the partnership agreement does not otherwise provide, this act governs relations among the partners and between partners and the partnership." K.S.A. 56a-103(a).

RUPA defines partnership property in four subsections of K.S.A. 56a-204. The first two provide:

8

"(a) Property is partnership property if acquired in the name of:

(1) The partnership; or

(2) One or more partners with an indication in the instruction transferring title to the property of the person's capacity as partner or of the existence of a partnership but without an indication of the name of the partnership.

"(b) Property is acquired in the name of the partnership by a transfer to:

(1) The partnership in its name; or

(2) One or more partners in their capacity as partners in the partnership, if the name of the partnership is indicated in the instrument transferring title to the property."

Because the deed to the Elk County property was titled in Stephens' and Lewis' names individually and did not mention the partnership or otherwise suggest any intent to transfer title to the partnership or to one of the partners, these two subsections do not apply.

Instead, K.S.A. 56a-204(c) and (d) control our determination of this case. Subsection (c) instructs us that property is presumed to be partnership property when purchased with partnership assets—even when the titling document does not so indicate:

"(c) Property is presumed to be partnership property if purchased with partnership assets, even if not acquired in the name of the partnership or one or more partners with an indication in the instrument transferring title to the property of the person's capacity as a partner or of the existence of a partnership."

"If partnership assets were used in the purchase, the property is presumed to be partnership property, notwithstanding the state of title." Hecker, *The Kansas Revised Uniform Partnership Act*, 68 J.K.B.A. 16, 20 (October 1999).

But if the property is acquired in the name of one or more of the partners without reference to the partnership or to the person as a partner and without use of partnership

9

assets, the contrary presumption arises under subsection (d)—the property is presumed to be separate property.

> "(d) Property acquired in the name of one or more of the partners, without an indication in the instrument transferring title to the property of the person's capacity as a partner or of the existence of a partnership and without use of partnership assets, is presumed to be separate property, even if used for partnership purposes." K.S.A. 56a-204.

The Elk County property was acquired in the name of one or more partners, without an indication in the title of their capacity as partners or the existence of a partnership. The determining factor in these competing presumptions in this case is thus whether the property was purchased with partnership assets. See K.S.A. 56a-204(c), (d). Under these facts, if the property was acquired "without use of partnership assets," the presumption of separate property arises. But if the property was "purchased with partnership assets," the presumption is that the Elk County property is partnership property. Although Kansas cases have not examined this presumption, some other jurisdictions find that "the presumption can apply even when the partnership provides only a portion of the purchase price." *Mogensen v. Mogensen*, 273 Neb. 208, 216, 729 N.W.2d 44 (2007). See *Bachand v. Walker*, 455 N.W.2d 851, 855 (S.D. 1990); 59A Am. Jur. 2d, Partnership § 247. We use that approach here.

Before we examine that issue, we address Stephens' contention that the construction of the cabin in 1995 and the purchase of the 80 acres in 1997 predated the 1998 enactment of RUPA, so should be governed by the prior statute—the UPA. As to partnership property, the UPA provided:

> "(a) All property originally brought into the partnership stock or subsequently acquired by purchase or otherwise, on account of the partnership, is partnership property.

10

"(b) Unless the contrary intention appears, property acquired with partnership funds is partnership property.

"(c) Any estate in real property may be acquired in the partnership name. Title so acquired can be conveyed only in the partnership's name." K.S.A. 56-308 (Furse 1994).

We find no material difference between the two Acts, as applicable here. Under either Act, if the property was purchased with partnership funds, a presumption arises that the property was partnership property. Under either Act, the partners' intent controls, as the parties agree. This is explicit in the UPA's statement that property acquired with partnership funds is partnership property "unless the contrary intention appears," and is implicit in RUPA's rebuttable presumption that property purchased with partnership assets is partnership property.

*Which presumption applies here?*

Was the Elk County property purchased with High Plains funds so as to trigger the presumption of partnership ownership? Conflicting evidence was presented on this important topic. We separately address evidence regarding the cabin, the 80-acre tract, and the 40-acre tract.

*The cabin*

The cabin was built in 1995. Lewis, Stephens, and Schreck personally participated in building it. But High Plains was also involved in the construction of the cabin to some extent, as Lewis testified that some High Plains' employees worked on the cabin and some of the materials were purchased on High Plains' account—they likely received discounted materials from the company. Lewis testified that there was a business purpose for "running it through" High Plains.

11

Darrin Schmidt, bookkeeper for Cytech, In-Tech, and High Plains, testified that the money to fund construction of the cabin came "through High Plains . . . through the building materials and labor . . . and then [Stephens and Lewis] put any additional money in." He also testified to having heard more than one conversation between Stephens and Lewis in which they agreed that the expenses for "the ranch" were personal, and they intended to take those expenses out of High Plains' books and put them into their personal drawing accounts.

But Stephens' wife testified to the contrary—that High Plains built the cabin with High Plains funding and not with their personal money. Evidence thus conflicted as to whether the cabin was built with use of partnership assets.

*80 acres*

Lewis and Stephens purchased in 1997 an 80-acre parcel of land adjacent to the property on which the cabin sat. To do so, Lewis and Stephens obtained financing as individuals through Fredonia State Bank. The parties to the mortgage were Stephens, Lewis, and their respective wives, individually, without any reference to the partnership or to one's status as a partner.

But other testimony suggested that High Plains assets were used to purchase that property. In his deposition, Lewis testified that "[t]he 80-acre parcel was purchased by High Plains with [his] agreement." And High Plains paid the mortgage on the 80-acre property from 1997-1999, and paid the utilities until 2003. Evidence thus conflicted as to whether the 80 acres were purchased with use of partnership assets.

*40 acres*

Lewis and Stephens purchased the 40-acre parcel that included the cabin in 2000. Schreck retained the right to use the cabin and the right of first refusal upon its sale. Lewis and Stephens used a check from High Plains at closing. Yet Lewis testified that High Plains did not purchase the property; he and Stephens financed and purchased the property personally. He said "the source of money had to be borrowed personally by [Stephens and Lewis] to be able to take a check written by High Plains and for the closing." He described High Plains as "a vehicle" to which they transferred their personal money to purchase the property. Lewis and Schmidt consistently referred to funds going "through" High Plains, as though it were a mere conduit.

Lewis testified that although they used High Plains' checks for certain transactions, they adjusted the company's accounting records to ensure their personal money was actually used. Similarly, Schmidt testified that High Plains' accountant had told Lewis and Stephens that although High Plains wrote the check, he would "adjust it" to their drawing accounts or equity accounts.

But no such adjustment was apparently made. Schmidt could not verify that any such changes had been made on High Plains' books. Nor could Nikki Metzger, a CPA who helped perform accounting and tax services for Cytech, In-Tech, and High Plains from 1994 to 2003. She found no entries in High Plains' books and records moving expenses to the partners' individual accounts. Ryan Stephens (Stephens' son and a senior accounting manager for an investment company) also testified he found no such adjusting entries in High Plains' books. Evidence thus conflicted as to whether the 40 acres were purchased with use of partnership assets.

*The presumption of separate property applies*

The record contains testimony from which the district court could have found for either party on this crucial issue—sufficient evidence would have supported the district court's decision that the property was or was not purchased at least in part with High Plains' funds. The question remains one of fact to be determined by the district court, largely based on its credibility determinations. We find substantial competent evidence supporting the district court's conclusion that the cabin, the 80 acres, and the 40 acres were purchased with Lewis' and Stephens' personal funds, triggering the statutory presumption that the property was separate property. Because substantial competent evidence supports this finding, it is of no consequence that contrary evidence was adduced which, if believed, would have supported a different finding. See *Gannon*, 308 Kan. at 382.

Accordingly, we apply the presumption in K.S.A. 56a-204(d):

"Property acquired in the name of one or more of the partners, without an indication in the instrument transferring title to the property of the person's capacity as partners or of the existence of a partnership and without use of partnership assets, is presumed to be separate property, even if used for partnership purposes."

*Was the presumption rebutted?*

This presumption is a rebuttable presumption. RUPA creates a rebuttable presumption that property acquired with partnership funds is partnership property. Hecker, *The Kansas Revised Uniform Partnership Act*, 68 J.K.B.A. 16, 19 (October 1999). ("The UPA created a rebuttable presumption that property acquired with partnership funds was partnership property.") Similarly, RUPA's presumption of separate property is rebuttable. Kansas cases have not addressed how this presumption may be

14

rebutted, so we briefly address two cases from other jurisdictions which illustrate how that may happen.

In *In re Estate of Liike*, 776 N.W.2d 662, 665 (Iowa App. 2009), the presumption of separate property was rebutted by proof that the partners treated the land as a partnership asset from the time it was transferred to them. The court found the partners signed a partnership agreement showing it was an asset of the partnership as of a certain date; one brother testified that it always was a partnership asset; two other knowledgeable witnesses testified that the brothers treated the land as a partnership asset and that one of them related on occasion that the farm was in a partnership; and no evidence showed either a dissolution of the partnership or a distribution of its assets.

In another case, the presumption of separate property was not rebutted when one partner originally owned the land and personally financed the overwhelming majority of the construction costs; the other partner was to be "reimbursed" for much of the money she spent to help the other finish the building; the accountant never treated the building as a partnership asset and was never instructed to do so by either party; but the partnership paid for insurance and taxes. *Ferguson v. Holmes*, No. A-08-442, 2009 WL 306314, at *6 (Neb. App. 2009) (unpublished opinion).

*Various factors are relevant*

In determining whether a party has rebutted the presumption, no single factor or combination of factors is dispositive. Ultimately, the partners' intentions control whether property belongs to the partnership. *Mogensen*, 273 Neb. at 216. See 59A Am. Jur. 2d Partnership § 244-245.

Our focus is on the partners' objective manifestations of intent. The partners are free to contribute to or to withhold from the partnership any property they choose. Our

goal is to enforce their intent as best we can determine it from the facts established at trial.

*Admissions*

Stephens contends that certain statements by Lewis are controlling admissions which compel a finding that the property was owned by High Plains. These include Lewis' statements that High Plains paid for the cabin's construction, the mortgage, and utilities, and that the cabin was used to get everyone together, which could be considered a business purpose. Stephens contends that a party's admissions against interest are the strongest kind of evidence and override other factors. See *City of Wichita v. Sealpak Co.*, 279 Kan. 799, 802, 112 P.3d 125 (2005) (finding "'[a]dmissions against interest made by a party are the strongest kind of evidence'").

As true as that general proposition of law may be, it does not apply here because Lewis' alleged admissions were contradicted. See *Hiniger v. Judy*, 194 Kan. 155, 165, 398 P.2d 305 (1965) (finding such admissions are binding and conclusive if uncontradicted or unexplained). Stephens' argument ignores contrary statements Lewis made, which could also be considered controlling admissions. These include Lewis' testimony that the parties merely used High Plains as "a vehicle" to which they transferred their personal money to purchase the property, that their intent was to use personal funds to purchase the property, that High Plains did not purchase the property, that he and Stephens financed and purchased the property personally, and that the cabin had no profit motive and was merely personal.

The district court could not find selected portions of Lewis' testimony to be controlling admissions against interest while discounting his contrary testimony. The district court heard all the evidence, including Lewis' conflicting testimony. It alone could judge the credibility of Lewis and all other witnesses and determine the weight of

16

their statements. We decline Stephens' invitation to find only some of Lewis' statements to be dispositive and instead consider a variety of factors in determining the parties' intent regarding the Elk County property.

*Various factors aid in determining intent*

We determine the intent of the parties by considering all the pertinent facts and circumstances. The district court relied on the following factors to aid its determination: (1) the language of any partnership agreement; (2) the use of the property in the partnership business; (3) the listing of the property as an asset and of its mortgage as a liability in the partnership books and tax returns; (4) the construction of improvements on the property at partnership expense; (5) the payment of taxes and insurance premiums on the property out of partnership funds; (6) a party's declaration of intent, such as by letter or will, accompanying his or her act of entering the partnership; and, generally, (7) the parties' conduct with respect to the property.

The district court cited *In re Estate of Grosboll*, 315 P.3d 1284, 1290 (Colo. App. 2013) which used these factors. But *Grosboll* examined whether real property purchased by and held in the name of a single partner was a private or partnership asset. That is not the issue here. Nonetheless, the parties do not allege that use of the *Grosboll* factors is improper.

The district court properly focused on the intent of the parties. For example, it found "the purchase of the land and construction of the cabin and its use was never intended for a partnership purpose. Therefore it never became partnership property." It held that "[t]he intent of the parties, as discerned from the factual factors, is clear that the Elk County property was for the personal benefit of [Stephens and Lewis] and never served a business purpose." But the district court did not state how it applied the factors individually. Stephens contends the court misapplied the factors and erred in requiring

17

the cabin itself to have served a business purpose. But if a district court reaches the right result, its decision will be upheld even though it relied upon the wrong ground or assigned erroneous reasons for its decision. *Rose v. Via Christi Health System, Inc.*, 279 Kan. 523, 525, 113 P.3d 241 (2005).

We examine the *Grosboll* factors individually, below, in determining whether evidence refutes the presumption that the Elk County property was personal and not partnership property. We then examine some additional factors relevant to this determination.

1) *The language of any partnership agreement.*

The record includes no evidence of any language in a partnership agreement, or of any partnership agreement.

2) *The use of the property in the partnership business.*

The record shows that the Elk County property was not used in the partnership business, which was primarily constructing metal structures. Instead, the property was used for recreational purposes only. Schmidt testified, however, that he had heard Lewis and Stephens orally agree on about four occasions that the two would share the cabin "50/50 amongst themselves as partners." Lewis said the cabin construction by High Plains was "a good way to incorporate the people and . . . bring them out . . . there," so Stephens argues that the cabin served the business purpose of engendering loyalty or goodwill among employees. But Lewis also testified that the cabin had no profit motive and was merely personal. Conflicting evidence was presented on this point. Substantial competent evidence supports the district court's determination that the Elk County property did not serve a business purpose, but that fact is not controlling.

18

3) *The listing of the property as an asset and of its mortgage as a liability in the partnership books and tax returns.*

The Elk County property was not listed as an asset of High Plains, nor was it listed as a liability in the partnership books or tax returns.

4) *The construction of improvements on the property at partnership expense.*

The sole improvement on the property was the cabin, which we have found was not constructed at partnership expense. Substantial evidence supports the district court's finding that the partnership was used as a mere conduit for personal funds, as it relates to the Elk County property.

5) *The payment of taxes and insurance premiums on the property out of partnership funds.*

The record contains no evidence about the payment of insurance premiums on the property but shows that High Plains paid property taxes on the cabin from 1995 until 1997.

6) *A party's declaration of intent, such as by letter or will, accompanying his or her act of entering the partnership.*

No such declaration of intent is in the record. The parties had an oral partnership and were apparently unconcerned with formalities such as writing any agreements or statements of intent. This factor is likely more useful when examining, as *Grosboll* did, whether real property purchased by and held in the name of a single partner is a private or partnership asset. The crucial time for purposes of our case, however, is not the date of

entering the partnership but the date of constructing the cabin and purchasing the land. We examine that as a separate factor below.

    7) *The parties' conduct with respect to the property.*

    During the existence of the partnership, the parties used the property for hunting and other recreational uses.

    After 2003, Lewis rarely visited the property yet he maintained a bedroom in the cabin while Stephens lived there. Although Lewis did not use the property often, no facts indicate that Stephens prevented him from doing so. Bill Baxter, a friend of the two since school days, thought Stephens had taken possession of the cabin. He understood from Stephens that Lewis had given up his ownership interest in the property to account for the money Lewis owed Stephens. While Lewis visited the property infrequently, Stephens began staying at the cabin regularly on weekends.

    Stephens acted as if he owned the land in his personal capacity after 2003. That year, Stephens refinanced the two Fredonia State Bank mortgages into one mortgage in his name only. Stephens later gave neighbors permission to harvest trees off the land, signed oil and gas leases, and signed a water easement. Stephens received money from pasture rental which he put toward bills and improvements for the land. His daughter testified that her father took the property "as distribution . . . from the demise of High Plains, the partnership, and . . . the debt that [Lewis] owed [him]." She testified that Stephens used the property as his residence after his separate maintenance proceeding in 2010 until his death in 2013. Stephens treated the cabin as his primary residence and paid the mortgage, taxes, and utilities without contribution from High Plains or Lewis.

    Stephens' widow testified that High Plains dissolved in or around 2000, and that Stephens had received the Elk County property in lieu of monetary payment of the debt

20

that Lewis owed Stephens. She believed Stephens became the sole owner of the property about that time. But as noted above, others placed the date of dissolution around 2002-2004.

The timing of the events could support the conclusion that Lewis gave his interest in the Elk County property to Stephens as part of the distribution of partnership assets. But the facts could support a contrary inference instead. Because Stephens' name was on the mortgage of both properties, he was jointly and severally liable for its payment. Stephens knew that Lewis owed him over $140,000, and may have concluded that Lewis would not or could not pay the mortgage, so Stephens paid it. Thus Stephens' taking possession and paying the mortgage around the time of the partnership dissolution is not necessary because he had received that property as distribution of partnership assets.

Some evidence of the parties' intent is revealed by their treatment of a 2008 draft agreement regarding ownership of the property. That year, Stephens drafted and asked Lewis to sign a written agreement stating Lewis and his wife relinquished all ownership in the Elk County property. The agreement stated that it was between four parties: Stephens, Stephens' wife, Lewis, and Lewis' wife. It identified the Elk County property, then stated: "William J. Lewis Jr. and Carol Lewis relinquish all ownership in the above-described property. . . . Each of the parties and their heirs shall enjoy lifetime hunting, fishing and recreational rights to the above described property." The agreement contained a signature line for each of the four individuals.

Lewis refused to sign the document. But if Lewis had already given his interest in that very property to Stephens during their earlier partnership dissolution, it is reasonable to infer that Lewis would have signed it. By drafting the agreement and asking Lewis to sign it Stephens expressly recognized that Lewis continued to believe in 2008 that Lewis owned the property. Yet Stephens made no reference in the agreement to the partnership or to Stephens' purported ownership of the property as a partnership asset that had been

21

previously distributed to him during dissolution of the partnership. And he directed the agreement not to Lewis as his former partner but to Lewis and his wife individually. This draft agreement appears to evidence Stephens' belief in 2008 that Lewis still owned the property individually—it does nothing to assist his assertion that the partners intended for Stephens to own it by virtue of the partnership's distribution of assets during its earlier dissolution.

When Lewis refused to sign the ownership agreement, Stephens took no further formal or written measures to establish his sole ownership of the property, although he could easily have done so.

> "[A] joint tenancy may be terminated by a party's action indicating his or her intent that the property no longer be owned as joint tenants. When dealing with real property owned by two individuals as joint tenants with rights of survivorship, one of the joint tenants may sever the joint tenancy by unilaterally executing a quitclaim deed to himself or herself. The execution and delivery of such a unilateral self-conveyance clearly demonstrates the tenant's intent to sever the joint tenancy. *Reicherter v. McCauley*, 47 Kan. App. 2d 968, 973, 283 P.3d 219 (2012)." *Commerce Bank v. Posey*, No. 110,789, 2014 WL 4231298, at *5 (Kan. App. 2014) (unpublished opinion).

Nothing like that happened in this case. At any time, Stephens could have severed his joint tenancy by conveying his interest to a third person or by self-conveying to himself. *Hall v. Hamilton*, 233 Kan. 880, 885, 667 P.2d 350 (1983); *Reicherter v. McCauley*, 47 Kan. App. 2d 968, 973, 283 P.3d 219 (2012). He did not do so, nor did he take any action that would have demonstrated his intent to sever the joint tenancy.

Two years later, Stephens claimed the property as his own in his and his wife's separation proceeding, which made no reference to any partnership property. In February 2010, Stephens filed for separate maintenance and received a quitclaim deed from his wife for the property. In Stephens' Domestic Relations Affidavit, he lists the Elk County

22

property under "real estate" and as his residence. Stephens received 100% interest in the property in the division of assets in the Journal Entry of Judgment and Decree of Separate Maintenance.

Stephens treated the property similarly in his 2010 bankruptcy proceeding, which claimed the Elk County property as his homestead and his private residence. He made no reference to High Plains or to the property as partnership property. Stephens' bankruptcy filings do, however, reference an IRS lien against Lewis' interest in the property in an unknown amount.

In 2011, Lewis and his wife divorced and he received a quitclaim deed from his wife for the Elk County property. After Stephens died in 2013, Lewis sought to take possession of it and made various repairs and improvements to it.

Nothing in the parties' conduct with respect to the Elk County property during the existence of the partnership indicates they considered it to be partnership property. That makes it less likely that the property was a partnership asset awarded to Stephens during dissolution. The facts regarding the award of the property to Stephens during dissolution of the partnership in lieu of the money Lewis owed Stephens are equivocal.

We briefly address a few other factors we find relevant. See *Standring v. Standring*, 794 P.2d 1089, 1090-91 (Colo. App. 1990); *Mogensen*, 273 Neb. at 216-17; *Leckrone v. Walker*, No. M1998-00974-COA-R3-CV, 2002 WL 773147, at *3 (Tenn. App. 2002) (unpublished opinion).

8) *The attribution of profits or losses from the property to the partnership.*

Metzger testified that High Plains listed no property in Elk County, Kansas, as an asset on its tax returns for years 1994 to 2003, and High Plains made no entries on its

23

adjusted trial balance or income tax returns for profit or loss for property in Elk County during those years. Those were the only years that the record shows the High Plains partnership arguably existed, thus we find no profits or losses from the property attributed to the partnership.

9) *The use of partnership funds to maintain the property.*

High Plains paid utilities until 2003. Otherwise, the record does not show that partnership funds were used to maintain the property.

10) *Whether partnership books and accounts treat property as partnership property.*

High Plains' books and accounts do not treat the property as partnership property except perhaps for deducting the expense of the cabin construction on its tax return.

Substantial evidence supports the district court's finding that the parties merely funneled their personal funds through High Plains and used the partnership as a mere "conduit for personal funds" so they could take "personal financial advantage of buying materials to construct the cabin at wholesale and charging the cost of constructing the cabin to High Plains creating a tax advantage."

11) *The parties' statements, conduct, and writings when the property was acquired.*

Two written documents were made when the property was acquired: the mortgages and the deeds. In 1997, when the 80-acre parcel was purchased, Lewis and Stephens obtained financing for it as individual mortgagors through Fredonia State Bank. The parties to the mortgage were Stephens, Lewis, and their wives. In 2000, when the 40-

acre parcel was purchased, Lewis and Stephens did the same. Each time, the four individuals signed the mortgage individually, without any reference to their status as partners or to the existence of a partnership. And each time those individuals warranted that they were "lawfully seized of the estate . . . and ha[d] the right to grant, bargain, convey, sell, mortgage and warrant the Property. . . [and] that the Property is unencumbered, except for encumbrances of record." Nothing in the mortgages tends to show that the property was intended to be partnership property.

The deeds also support the district court's finding that the property was not intended to be treated as partnership property. The partnership existed before the cabin was built or the acreage was purchased and a partnership can hold title to real property. K.S.A. 56a-204(a)(1). Nonetheless, Lewis and Stephens did not refer to the partnership or to their capacity as partners on either title, evidencing their intent to hold the property individually. Instead, the 1997 deed to the 80 acres states that "William J. Lewis, Jr. and Randall L. Stephens" purchased the property as joint tenants with rights of survivorship and not as tenants in common." Similarly, the 2000 deed to the 40 acres states that "Randall L. Stephens and William J. Lewis, Jr." purchased the property as joint tenants with rights of survivorship and not as tenants in common."

Nor did the parties change either deed later when the partnership was dissolved and its assets were distributed, as one might expect had Lewis given his interest in the property to Stephens at that time.

*Conclusion*

When we review all these factors indicative of intent, we find some evidence cutting both ways. But we must accept as true the inferences that support the district court's findings of fact. *State v. Orr*, 262 Kan. 312, 322, 940 P.2d 42 (1997). We find substantial, competent evidence supporting the district court's tacit finding that the

evidence fails to rebut the presumption that the Elk County property was personal property. Lewis obtained full and exclusive ownership in the property as the surviving joint tenant when Stephens died.

This remains the case, as that joint tenancy was not severed. See *Campbell v. Black*, 17 Kan. App. 2d 799, 804, 844 P.2d 759 (1993) (listing severance by mutual agreement of the parties, by course of conduct indicating tenancy in common, or by operation of law upon destruction of one or more of the required unities [time, title, interest, and possession]). Thus the property is unified in Lewis' estate.

We find it unnecessary to address the additional theories on which the district court relied. Its decision is supported by substantial competent evidence and will not be disturbed. It heard the witnesses, judged their credibility, and weighed the competing evidence—matters we cannot revisit.

*The statute of limitations does not bar this result*

We briefly address Stephens' contention that the three-year statute of limitations for oral contracts in K.S.A. 60-512(1) bars Lewis from relitigating the partnership debt and distribution of partnership property to Stephens. But to do so, Stephens restyles the case, arguing that Lewis is untimely contesting the completed distribution of High Plains, which occurred before 2010. But Stephens, not Lewis, is the plaintiff in this case, and this argument rests on Stephens' unsuccessful assertion that the Elk County property was partnership property distributed to Lewis when High Plains was dissolved.

Affirmed.